## BLACK *v.* THE CARROLLTON RAILROAD COMPANY.

The plaintiff's son, a lad of fourteen, a passenger in the cars of the Carrollton Railroad Company, had both legs broken by the upsetting of a car. The accident was caused by the negligence of a servant of the company. *Held :*

1. It is an implied condition of the contract of Railroad Companies with each passenger, that he shall not be put in jeopardy of life or limb, by any fault—even the slightest—of the servants of the company.

2. Under Article 1928 of the Civil Code, paragraph 3, it is competent for the jury to assess heavier damages than the actual pecuniary loss proved.

3. In an action by a father against a Railroad Company for damages to his minor son, received in consequence of the negligence of defendant's servant, it is competent for the jury to take into consideration not only the charges for medical attendance, including medicines and nursing, but the loss arising from the neglect of plaintiff's business during his son's illness. It is competent for the jury to take into consideration also, the prospective loss to the father likely to arise from the crippled state of his son.

4. But the jury cannot, in such a case, take into view the shock to parental feelings, in consequence of the injury to the child, and assess vindictive damages in favor of the parent—such damages being recoverable only by those who, in their own proper persons, are victims of the misconduct of the servants of such companies.

5. For the damages suffered by the child himself, the father could, by virtue of the paternal authority, have brought an action for the child's use.

The civil action for offences and quasi-offences is given by Article 2294 of the Code. This article designates the purpose and limit of the action. It is simply reparation—a just and adequate compensation to the plaintiff for the injury received by him from defendant. It suggests no idea of revenge or punishment. Nor is there any thing in the Code or settled principles of our law, which sanctions punitory, vindictive, or exemplary damages. Where the immediate sufferer is plaintiff, as he is to be indemnified, every circumstance tending to his injury, whether in mind, body or estate, may be taken into view; but considerations cannot be entertained which do not relate to the consequences of the injury to the sufferer. The true issue in the action is the guilt of the defendant, and the damage it did to the plaintiff. Criminal punishment is not to be inflicted in a civil action. *Slidell*, C. J. dissenting.

| | |
|---|---|
| 10 | 33 |
| 107 | 375 |
| 10 | 33 |
| 109 | 912 |
| 10 | 33 |
| 114 | 1012 |
| 10 | 33 |
| 115 | 468 |
| 10 | 33 |
| f116 | 965 |
| f116 | 1089 |
| 10 | 33 |
| 120 | 1022 |

BLACK      For discussion of the doctrine of offences and quasi-offences, see the dissenting opinion of *Slidell*,
*v.*        C. J.
CARROLLTON R.R.  C. C. 251, 267, 1928, 2294.

THIS case was tried by a jury, before the First District Court of New Or-
leans, *Larue*, J.

*Goold* and *R. Hunt*, for plaintiff:

*Butterfield* v. *Forrester*, 11 East, 60. The plaintiff was riding along a road,
at a furious rate, and fell against an obstruction, negligently left upon the road
by the defendant. Lord Ellenborough said: "Two things must concur to sup-
port this action. An obstruction in the road by the fault of defendant, and no
want of ordinary care to avoid it on the part of plaintiff."

And in *Bridge* v. *Grand Junction Railway Company*, the point was pre-
sented as a question of practice, and Lord Abinger said: The negligence of the
plaintiff, in order to preclude him from recovering, must be such as that he
could, by ordinary care, have avoided the consequences of defendant's negli-
gence. 3·Mason & Welbsy, 247.

In *Davis* v. *Mann*, 10 Mason & Welbsy, 545: The defendant negligently
drove his horses and wagon against and killed an ass, which plaintiff had left
fettered in the highway, and which could not get out of the way. Baron Parke
said: "Although the ass may have been wrongfully there, still the defendant
was bound to go along the road at such a pace as would be likely to prevent
mischief. Were this not so, a man might justify the driving over goods left
on a public highway, or even over a man lying asleep there, or the purposely
running against a carriage going on the wrong side of a road."

In *Sills* v. *Brown*, 9 Carr. & Payne, 601: The plaintiff's barge, which was
collided by the defendant's brig, and much injured in consequence of the pro-
jection of the brig's anchor, Justice Coleridge laid down the true rule by say-
ing; "The position of the anchor will not be sufficient to make the defendant
liable, if the plaintiff, by his servants, substantially contributed to the occur-
rence of the injury—not to its amount, but to the occurrence of it."

· In *Raisni* v. *Mitchell*, idem. 613: The jury found there was some fault on
both sides, and being asked by Chief Justice Tindal, if they had considered
the whole matter, the foreman replied in the affirmative. Then the defendant's
counsel claimed the verdict; but the Judge said, "no—there may be faults to
a certain extent." Of course, his language meant, that the jury having con-
sidered the facts on both sides, had, by giving plaintiff a verdict, substantially
found that the fault on his side had not tended to produce the injury.

*Smith et al.* v. *Dobson*, 3 Mann & Gragn, 59, (E. C. L. 40,) was a case of
collision. The plaintiff's barge was sunk by defendant's steamboat. The
plaintiff's vessel, it was contended, was insufficiently manned, the barge over-
loaded, badly trimmed, &c., and that, therefore, the plaintiff was in fault. The
Lord Chief Justice instructed the jury, that the plaintiff could not recover, if
the misconduct of his servants or the insufficient manning of his barge had
contributed to the loss. In returning a verdict, the foreman stated they con-
sidered the blame not attributable to defendants alone, and that the barge was
·not properly trimmed.

On a motion for a new trial, it was claimed that the verdict should have been
for defendant, as the jury found there had been fault on plaintiff's side. But
the court was unanimous in refusing to disturb the verdict, considering that
the jury had kept in view the amount and nature of the plaintiff's fault, and
that it had not tended to produce the injury.

In *Greenland* v. *Chaplin*, 5 Welbsy, Hurlstone & Gordon, 243, was a case
of collision. The foregoing cases were cited with approbation. Pollock, C. B.,
said: "I entirely concur with the rest of the court, that a person who is guilty
of negligence, thereby producing injury to another, has no right to say, 'Part
of that mischief would not have arisen if you had not been guilty of some
negligence.' I think that where the negligence of the party injured did.not,
in any.degree, contribute to the immediate cause of the accident, such negli-
gence ought not to be set up as an answer to the action," &c.

In *Beers* v. *Housatonic R. R. Company*, 19 Conn. 566, the court went even
further, and said: "The plaintiff is bound to exercise reasonable and ordinary
care; and in determining whether there has been such want of proper care, the

circumstances of the case, such as the tender age of the plaintiff, should be considered; and if the plaintiff is a child without·ordinary judgment or discretion, and conduct, on his part, which provoked the injury, was the result of childish instinct, which defendant might easily have foreseen, the latter would, in that case, be liable for his own negligence, though the act of the plaintiff co-operated with it." See *Bùge* v. *Gardner*, 19 idem, 507.

The defendant pretends that the plaintiff can recover nothing on behalf of his son, and that the relief must be restricted to indemnity for his mere outlay in obtaining the child's cure. It was said that if plaintiff should recover, even then his son would be entitled to an action.

But who is to bring this action? Can a minor bring a suit ? We will quote no law to prove this to be impossible. Then his tutor or his parent must bring it. But he can have no tutor if his parents be alive. Upon the death of both parents a tutor is to be appointed. Upon the death of one of them the survivor occupies this relation to him. C. C. 268.

"In our judgment, there can be no tutor to a child while the father and mother are alive." *Acosta* v. *Robin*, 7 N. S. 388.

"During the lifetime of both father and mother, tutorship is unknown to the law, minor children, during that period, being exclusively under the paternal authority." *State* v. *Parish Judge of Orleans*, 6 L. R. 365. *Handy*, *Under-Tutor*, v. *Parkison et als.*, 10 L. R. 98.

"Fathers and mothers shall have, during marriage, the enjoyment of their children's estates until their majority or emancipation." C. C. 239.

"Fathers and mothers owe protection to their children ; and, of course, they may, as long as their children are under their authority, appear for them in court in every kind of civil suit in which they may be interested," &c. Idem, 251.

"The father is, during marriage, administrator of the estate of his minor children." Idem, 267.

These citations make it clear that no one can appear in court to prosecute any claim, in reference to this lad, except the plaintiff, *Charles Black*, his father. If this lad had been guilty of an act of mischief, by which the property of the company had been injured, would the latter have an action against the child to repair the damage? Certainly not. His father would be answerable, and an action would lie directly against him. A minor cannot be sued. *Cleveland* v. *Mayo*, *Tutor*, 19 L. R. 417. "The father, or, after his decease, the mother, is responsible for the damage occasioned by their minor, or unemancipated children residing with them, or placed by them under the care of other persons," &c. C. C. 2297.

If the plaintiff must pay the damages his son may occasion, he has a right to collect such damages as may be occasioned by an injury to his son. The construction defendant gives to our laws on this subject, is too grossly unjust to be admitted for a moment. This interpretation is a virtual refusal of all relief to a minor who may be maimed for life.

1. It is said the plaintiff cannot maintain the action.
2. The law distinctly says the minor cannot bring the action.
3. *Ergo*—Nobody can bring the action.

The common law authorities, referred to by defendants, concerning the right of a father to sue have no bearing on this case. By that system it is said that a father can recover nothing beyond his actual outlay in such cases. This is accounted for by the fact, that by the principles of the common law, the father is not bound to pay for his child's maintenance, and should, therefore, not recover damages for an injury done his child. The father, by the common law, is obliged to support only such of his children as may by accident, youth, or disease, be disabled from work, whereas, by the civil law, the father is compelled, absolutely, to support his offspring. Blackstone, vol. 1, p. 449, says : " No person is bound to furnish a maintenance for his issue, unless where the children are impotent and unable to work, either through infancy, disease, or accident, and then is only obliged to find them with necessaries, the penalty on refusal being no more than 20s. a month." See Lecture XVI.

" A third person, who supplies an infant with necessaries, cannot maintain an action against the parent therefor, unless the latter has expressly or impliedly contracted to pay the amount, there being no legal obligation on the parent to support his child independent of the statute provisions." *Raymond* v. *Lloyd*,

10 Barbour, 483. See *Dennis* v. *Clark*, 2 Cushing, 347, and authorities in *Urmston* v. *Newcomen*, 4 A. & E. 899. Tucker's Com. vol. 126.

The technical action *per quod servitium amisit* is unknown to our law. Art. 1928 of the Code comprehends all injuries to which a person may be subjected. The law presumes and will admit no contradiction of the presumption that the sum awarded as damages for injury to the son, will be properly guarded and appropriated by the father. The natural impulse must be trusted, and a recovery by the father is a recovery by the son.

*Garnett Duncan* and *Benjamin & Micou*, for defendant and appellant:

The court instructed the jury that appellant was bound at all times to have its road in a safe and good condition, so as not in the slightest degree to endanger the lives and limbs of passengers, and to avail themselves of all the discoveries of science, or the knowledge derived from experience.

This charge requires a railroad to be kept free from any and every possible casualty. The degree of knowledge and care thus demanded, is not that of a prudent and skillful person; but the utmost possible amount of human knowledge and care, and makes a railroad substantially a warrantor against all possible casualties, instead of charging it for neglect.

Under this instruction, the jury was obliged to give plaintiff a verdict, because they were not left free to find that this was a mere accident, not occasioned by neglect.

II. The defendant asked the court in substance to charge that this was a suit of the plaintiff for the damages he had sustained, and that it was not a suit in behalf of the son for damages the son might have sustained.

That it would not and did not prevent another suit in behalf of the son, and that the plaintiff in this action could only recover the special damages which he had alleged and proven.

All of these instructions should have been given. They were all refused. On the contrary, the court instructed the jury, that an action on behalf of the son was barred by prescriptions.

*Non licuit*, that there was not such a suit pending in some other court, and although such suit might be barred by prescription, it was not barred by this suit, which was the point asked.

The court went further, and instructed the jury that they might estimate as the damage, the probable loss, past and prospective, to the plaintiff.

We submit that this was calculated to mislead the jury, and to make them assess in this suit, not only damages sustained by both father and son, but beyond that also, the probable prospective loss.

Actual damages sustained by the plaintiff, we understand to be the true rule.

III. These instructions fully account for the verdict; for if the probable prospective loss of the son, and not the actual damage sued for by the plaintiff, had to be estimated, the damages may not be so excessive as to call for a reduction. But if the converse of the proposition is the true rule, then the damages are clearly excessive.

IV. What, then, is this suit? Whose suit is it?

We submit the plaintiff could not in this same suit represent two different persons for such a cause of action as that set forth, and if he could, he has not by this petition attempted to do so.

"*Charles Black*," (not *Charles Black*, Tutor, &c.,) alleges that defendant is indebted to him in the sum of $25,000.

He alleges that his son was vigorous, &c., and had recently declined a salary, and was every day becoming more and more useful to his parents, and gave promise of repaying his parents for their care, &c.; that plaintiff is a commission merchant; that by the neglect of defendant, the plaintiff had been deprived of the services of his son, and compelled to lay out and expend $1,500 in furnishing medical and surgical aid and necessary attendance on him.

This petition is aptly drawn for *per quod servitium amisit*. It has all the appropriate allegations and characteristic marks of a suit, not on behalf of the son, but for the damage of the father. It is not for general damages, as it would have been if on behalf of the son, but for the special damages which the father had sustained.

It does not belong to the class of actions in which the law implies that this plaintiff sustained damage by the negligence complained of; and therefore it

was necessary for the plaintiff, as he has done, to set forth with particularity the resulting damage.   9 Coke's Reports, 113.

The special damage is the gist of the action, and must be averred and proven. 1 Chitty, 46, 47, 386, 387, 389.   3 Bl. Com. 142.

Under the *alia enormia*, he cannot give evidence of any such special damage. Chitty, 388.

See also 2 Chitty, 268, note —; 261, note Y; 245, note C; 375, note V; 374, note O.

This special damage must accrue before action brought.   1 Chitty, 390. 2 Chitty, 261.   2 L. Ray, 1382.

By our own Code, we find (C. C. 263) that the father, during the marriage, is the administrator of his child's property, and by 268, that he becomes 'tutor by nature after his wife's death.

By Arts. 235, 240, 243, and 246, the father is bound to support his child, and, therefore, the medical and surgical bills alleged, and the attendance of nursing the son, were legal charges against the father, which he could recover in a suit in his own name.

As to the $25 a month, which the son was offered, but not contracted for, it would have belonged to the son.  C. C. 242, shows that the father would not have had even a usufruct therein.

There must be *allegata* as well as *probata*, and there can be no recovery on the proof beyond the allegations.  What, then, is the extent of damages alleged and proven?

The petition alleges that the medical and surgical aid and the attendance, amounted to $1,500.  Plaintiff has offered proof to the full amount of this allegation, and possibly more.  On this head, therefore, he can be allowed $1,500 only.

BUCHANAN, J.* The plaintiff's son, a lad of fourteen, a passenger in the defendant's train, on its regular trip from Carrollton to New Orleans, had both legs broken by the upsetting of a railroad car.  The accident was caused by the switch being out of place.  The switch tender was not at his post, or the accident would not have happened.  He was a servant of the defendants, and they are liable for the consequences of his negligence.

This action is for damages resulting from this railroad accident, to the father of the wounded boy; and the legal question is presented for our consideration, what damages can be allowed to plaintiff, as distinguished from his son, who is no party to the cause, neither is any thing claimed therein for his use and benefit.  The argument of the learned counsel of defendants would confine the plaintiff's cause of action to the pecuniary loss proved to have been actually incurred previous to the institution of the suit; but we do not understand the measure of damages, under the legislation of Louisiana, to be so restricted. The Article 1928 of the Civil Code, paragraph 3, enacts that, in the assessment of damages in cases of offences, quasi-offences and quasi-contracts, much discretion must be left to the Judge or jury.  Under this rule, it was competent for the jury to find more than the actual pecuniary loss proved.

That loss seems to have been composed of two items—the charges for medical and surgical attendance, including medicines and nursing—and the neglect of plaintiff's business for two months and a half, during his son's illness.  We are of opinion, that the jury could properly take into consideration also, the prospect in loss to plaintiff, likely to arise from the crippled state of his son, which may render him a burden to his father, during a period when he would, were it not for accident, be able to provide for his own support, if not to succour and assist his father.

---

*Spofford, J., declined taking any part in this case.—REP.

The actual damage proved, does not fall short of twenty-five hundred dollars; and the prospective probable damage may reasonably be estimated, under the evidence, at twenty-five hundred dollars more.

In the view that we have taken of the measure of damages applicable to the defendants, as regards the plaintiff in this action, the verdict of the jury, ten thousand dollars, appears excessive. The jury seems to have taken into view, the shock to the parental feelings, and the solicitude and anxiety of the parents of the sufferer, which must be supposed to have been the consequence of the grave injuries and protracted convalescence of their child; and which are declared upon by plaintiff as elements of damages. But we are not disposed to admit the soundness of a doctrine, which would extend *vindictive* damages to a case like the present. We carefully note the distinction between the immediate sufferer from a railroad accident, and a relative of the sufferer, however near may be that relation. The subject is one of great, and of increasing, importance in our country, where railroad communication is so largely developed. Railroad companies are a species of common carriers, of comparatively recent date; yet their engines have already superceded the more tardy and less powerful vehicles of the past generation, upon all the great thoroughfares of the land. It is therefore of great public concern that the measure and extent of the liabilities of railroad companies should be determined with precision. They ought doubtless to be held to accountability for the misconduct of their servants. Like all corporations, they can only act through servants or agents. More than almost any other kind of corporation, their corporate business subjects them to the risk of accident. It is a duty which such a company owes to the public, to make velocity of locomotion compatible with safety, so far as this can be effected by prudence and skill. It is, moreover, an implied condition of their contract with each passenger, that the latter shall not be put in jeopardy of life or limb, by any fault, even the slightest, of the servants of the company. The sentiment of responsibility will be found the greatest safeguard against abuses; but at the same time that we are disposed strictly to enforce that responsibility, we deem it advisable not to extend the right to recover vindictive damages, to others than those who, in their own proper persons, are victims of the misconduct of the servants of a railroad company. Were this suit prosecuted for the behoof of the mutilated individual himself, it is possible we would not think the verdict of the jury too high. In that case, the bodily pain and suffering, the deformity of person, the diminished capacity of laborious exertion, might reasonably justify damages of the class called vindictive or exemplary; the standard of which is, of necessity, exaggerated beyond the limits of an exact arithmetical appreciation—being, as the title imports, in the nature of a penalty and of an example—partaking of the character of public justice, while redressing a private wrong. It may be well supposed that the mutilation of a healthy and promising boy, the pride of his parents, and the example of his schoolmates, such as the petition describes the plaintiff's son, has excited feelings of keenest anguish in the breast of his relatives, and of the most painful sympathy in many who were not endeared to him by the ties of kindred. But we do not understand the object of the law to be, the punishment of an offending party for having been the cause of unpleasant emotions in the family and acquaintances of the party offended; and this, in the form of a pecuniary compensation, to the relative or friend thus affected. Were such the law, the consequence of an offence to the offender, would be greater or

less, in proportion to the larger or smaller circle of friends of him who has been offended. This would be, obviously, to misplace the aim of public justice.

Upon these considerations, we think it proper to reduce the verdict in this case, in conformity to the estimate above expressed.

It is therefore adjudged and decreed, that the judgment of the District Court be reversed ; that plaintiff and appellee recover of defendants and appellants, five thousand dollars damages, with interest from 12th of March, 1852, date of the judgment appealed from; the cost of the court below to be borne by appellants, and those of appeal by appellee.

OGDEN, J. The importance of the principles involved in this case induces me, while concurring in the judgment pronounced by Mr. Justice Buchanan as that of the majority of the court, to express my own views of the law. There is no ground, I think, for questioning the plaintiff's right of action.

The defendants are responsible in damages and the only question is as to the quantum of damages and the principles which ought to govern in making the assessment.

In actions of this nature, our Code has declared that much discretion must be left to the Judge or jury. That discretion must doubtless be a sound discretion, but there are no fixed and precise limits within which it is to be exercised. The amount of damages must depend on the facts and circumstances of the case, the discretion must be exercised as well with regard to those circumstances as with regard to to general principles. Sedgwick on Damages, p. 26. Among those general principles, I recognize under our law the right of assessing what are called exemplary or vindictive damages. The Article 1928 of the Civil Code, paragraph 3d, speaks of a class of cases in which damages may be assessed without calculating on the pecuniary loss, or the privation of pecuniary gain to the party. Examples of this rule as applicable to contracts are given in which damages are allowed, although from their nature they are not appreciable in money, and under the same rule are classed cases of offences, quasi-offences and quasi-contracts, in which it is stated much discretion must be left to the Judge or Jury, "while in other cases they have none, but are bound to give such damages under the above rules as will indemnify the creditors," &c.

We have, therefore, the sanction of express legislation in this State for the rule which has so long existed at common law, and which has so long been acted on in England and in the United States, of allowing exemplary damages for personal wrongs and injuries. Chief Justice Kent in the case of *Tillotson* v. *Cheetham*, 3 J. R. p. 56, says, "Surely this is the true and salutary doctrine. The actual pecuniary damages in actions for defamation, as well as in other actions for tort, can rarely be computed and are never the sole rule of assessment. The rule, he says, is too well settled in practice and is too valuable in principle to be called in question. The same doctrine has been recognized by the Supreme Court of the United States in cases of marine trespass. Judge Story, in the case of the Amiable Nancy, 3 Wheaton, p. 546, says, "If this were a suit against the original wrong-doer it might be proper to go yet further and visit upon them in the shape of exemplary damages, the proper punishment which belongs to such lawless misconduct."

In our own jurisprudence, this has been considered a well settled principle. In actions of slander, such has always been held to be the rule. *Caulin* v.

*Stuart*, 2 L. R., 76. *Daly* v. *Vanbenthuysen*, 3d Ann., 69, and it can not be doubted that the same principles govern all actions for damages founded on a personal wrong or injury done to another. The damages in such cases not being susceptible of exact computation are nevertheless assessed according to the sound discretion of the Judge or Jury, and if there are circumstances of aggravation in cases of offences or of gross negligence in cases of quasi-offences, it is quite proper in assessing the damages to adopt the rule laid down in Sedgwick, of blending together the interests of society and of the aggrieved individual and allowing such damages as would save to prevent the repetition of such conduct.

This wholesome rule is one of the most important safe-guards of society and it would be dangerous to abandon it.

The verdicts of juries in actions of this nature inspire a salutary dread, for the reason that their discretion in awarding damages is not limited by any precise rules, and this is calculated to secure vigilance, care and circumspection among those who have the management of railroads, steam vessels and other public conveyances, which would not exist without it.

In the present case the damages are assessed by us only at what, under all the circumstances, it may be fairly presumed from the evidence, was the actual and should be the probable prospective loss sustained by the plaintiff.

SLIDELL, C. J., dissenting. The son of the plaintiff, a boy of fourteen years, was a passenger in the railroad train of the defendants. A switch being left partly open, which under the evidence must be considered matter of negligence on the part of the defendants, the cars were thrown off the track, and the child suffered grievous bodily harm, which has occasioned great expense and mental suffering to his father, and will probably render the child during the rest of their lives a burden to the parent. The action is based solely on allegations of damage suffered by the father, and which are laid at a total sum of $25,000. The only item specifically laid is $1500 for medical and surgical expenses and necessary attendance. The petition contains general averments as to the father's loss of time, mental suffering, the disappointment of his paternal hopes, with regard to the future of his child and the comfort and aid he expected to derive from his society and the fulfilment of his filial obligations.

We are not aware of any precedent in our reports of such an action by a father. Our first enquiry is how far such an action will lie under our laws and jurisprudence.

The mere letter of the 2294th Article of our Code is extremely comprehensive and unqualified with respect to the right of action for damages arising from offences and quasi-offences. "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it." Yet in general, this article must be considered as speaking with reference to the person of the immediate sufferer; and we think it was properly announced by our predecessors, as the general rule, that actions for injuries to the person are personal. The case, however, of parent and child may within certain limits be justly considered as an exception, and this by reason of the particular nature of the parental relation. Under the Roman law, the right of the father to bring an action for damages for an injury to the person of his child, could have admitted no discussion. For a long time at least, under that system the father was considered as having a right of property in the person of his child, and this was illustrated in the law de rei vindicatione which permitted him when his

child was carried away without his consent, to bring an action of revindication, an action which could only be brought to recover possession of things of which the demandant was owner. Hence also, under that system originally the parental power of life and death, and the assimilation of children to slaves.

The paternal power had in the Roman law this general effect, that the father of a family and all those under his power as such, were by a legal fiction considered, in private matters, as a single person. The consequences of this legal fiction were that all that a son acquired belonged to the father, that no contract could be made nor action lie between the father and the son, and that the son could not be a witness of his father's will. In some respects, however, from public considerations, this unity of person did not hold, as for example in the matter of the peculium castrense.

Our law has greatly softened this rigor of the paternal powers, and placed it in many particulars upon a different footing; but there are principles which can be invoked in support of the present action within certain limits, and which are expressly embodied in that part of our Code which treats of the paternal relation. The law imposes upon the father the duty of supporting the child— Article 243. The immediate and direct consequence of the injury done to the person of the plaintiff's child has been to make the performance of this legal duty more onerous. It has imposed upon the father the necessity of incurring a large pecuniary liability for medical and surgical aid, and devoting his own time and services to the attention of his child's sufferings at the sacrifice of his daily business. The damages thus sustained, although not sustained by the immediate sufferer, are recoverable, we think, by reason of the legal relation and legal duty of the claimant towards the party injured.

I think a sum of $1,500 may be allowed under the evidence for surgical and medical aid and necessary attendance.

Although clearly of opinion that the father's loss of time in attending on his child is a legal subject for damages, I regret that I have not been able to concur in the estimate of my brethren, in consequence of the meagreness of the evidence. The point expressly made by the defendant is "that there is no proof as to the amount of loss, and therefore none can be estimated."

It seems to me well taken. The sole facts proved in evidence to this item are that plaintiff lost sixty-nine days of time, at a busy season of the year, and was a produce broker. There is no evidence of his daily, monthly, or annual average receipt, or even of the general extent of his business or the average receipt of persons in that calling. The allowance made by my brethren seems to imply a high average annual emolument.

There is evidence of an offer of employment for the lad at $25 per month. But if the son had accepted this employment, the wages would have belonged to him, and the father would not have had even the usufruct. "This usufruct shall not extend to any estate which the children may acquire by their own labor and industry." Civil Code, Art. 242.

Under our Code, children are bound to maintain their father and mother when they are in need. The duty in the present case would attach upon the happening of a double contingency which may or may not arrive, to-wit: the father's being in need after his son's majority, and the son's being unable by reason of bodily infirmity resulting from this accident to contribute to the father's support. Such considerations, perhaps, form a very questionable basis for damages by reason of their uncertainty. If, however, it be admitted that

under our law, and under the very loose allegations of the petition, damages could be awarded for the prospective loss to the parent, by reason of the child's being probably incapacitated for aiding the parent hereafter, should he be in need, still I do not think damages could be assessed on that score without the assistance of evidence not offered in this cause. In such a calculation it would be necessary to estimate the probable lives of the parent and son, on such data as would be required in calculating an annuity, and data would also be necessary with reference to the cost of annual support according to the situation in life. To leave questions of this sort to the arbitrary discretion of a court or jury, unaided by evidence tending to something like probable and practical accuracy, would in my opinion be inadmissible.

I do not think the father's mental suffering should be an element in the assessment of damages in his favor. This would be extending without a sufficient legal ground the exception of the general rule that actions for injury to the person are personal.

Moreover let us bear in mind the difficulty which would result from recognizing the mental suffering of the third party as an element of damage. Where is any but an arbitrary limit to be found in extending its benefit? Could an action for damages on that ground, if allowed to the father, be refused to the mother, the brother, the sister?

The subject was recently considered in England, in an action by a widow for damages by reason of the killing of her husband, brought under the statute of 9 and 10 Vict., by which in such actions it was enacted that "the jury may give such damages as they may think proportioned to the injury resulting from such death, to the parties respectively, for whose use such actions shall be brought." The rule said to be adopted in Scotland of giving a *solatium* for the mental suffering, was held to be inapplicable to the English statute, broad and general as its language is; and the impossibility of apportioning the damages among the parties entitled to receive them, if they were based upon the mental sufferings of the parties, was greatly relied upon by the court as indicating the intention of the Legislature to confine the damages to the actual pecuniary loss of the sufferers. See, 10 Law and Equity Rep., 442. *Blake* v. *Midland Railroad Company.*

Let it be recollected that the action of this court to-day in a suit against a wealthy railway company may be invoked as a precedent to-morrow against a small tradesman, who sends out a horse and cart in the care of a servant. See the remarks of Coleridge, Justice, in the case just cited. See also, the Reporter's statement of the evidence in that case, which may be usefully consulted for the purpose of showing what data eminent counsel thought it necessary to put before the jury in such an action.

With regard to that portion of the unfortunate consequences of this accident which involves damages suffered by the child himself, his bodily pain, the mental suffering and mortification which his crippled and deformed condition will involve, the destruction or mental injury of his prospect of future usefulness to himself, for these I think the father cannot recover in this action, which is based wholly upon allegations of damage sustained by the father. For the damages suffered by the child himself, the father could by virtue of the paternal authority have brought an action for the child's use under the Article 251 of the Code, which says, "Fathers and mothers owe protection to their children, and of course they may, as long as their children are under their authority,

appear for them in court in every kind of civil suit, in which they may be
interested." See also, Article 267. The court therefore erred in refusing to
give the charge upon this point requested, as appears by the bill of excep-
tions,* and this misdirection destroys any value which the verdict might other-
wise have as a guide in the estimation of damages.

<div style="float:right">BLACK<br><i>v.</i><br>CARROLLTON R.R.</div>

In the above remarks I have assumed that the person injured could recover
for prospective loss by reason of his bodily inefficiency caused by the accident.
It is well to observe that the allowance of such prospective damages is express-
ly recognized in the Roman Law.

Ob hominem vero liberum occisum quinquaginta aureorum poena constitui-
tur. Si vero vivat, nocitumque ei esse dicatur, quantum ob eam rem œquum
judici videtur, actio datur. Judex enim compatare debet mercedes medicis
proestitas, cœteraque impendia, quae in caratione facta sunt; praeterea operas,
quibus cancit *aut cariturus est*, ob id, quod inulis est factus. Institutes of
Justinian, lib. iv, Tit. v. De obligationibus, quæ quasi ex delicto nascuntur.

Since there has been in our consultations upon this and another case now
before us, some diversity of opinion as to the purpose and limit of damages for
offences and quasi-offences, I have thought it proper to state the conclusion to
which a careful consideration of the Code and commentators has brought me.

I understand by the word offence, as used in our Code, every act of a man,
done with the intention of injuring another, and violating the laws or offending
social order. Offences may give rise both to public and private actions. The
public action has for its object to punish the disturbance of social order. It
belongs to the public, is exercised in its name, and by its functionaries. The
private or civil action has for its object the reparation of the damage which
the offence has caused to an individual, and belongs to those who have suffered
the damage. See, Merlin Repertoire, verbo Delit. Duranton, vol. 13, No. 699.

By the word quasi-offence, as used in our Code, I understand an act by
which one person without malicious intention, but through imprudence, causes
damage to another. Le quasi-delit, says Merlin, est un fait pour lequel une

* *Bill of Exceptions*—At the request of counsel for defendant, the Judge makes this memorandum
of his charge to the Jury:

1st. He read to them the 2294th, 95th, 96th, and 99th Articles of the Civil Code, to show the law
relative to the liability of defendant.

2d. He stated to the Jury that it was at all times the duty of the company to have its road in a
safe and good condition, so as not in the slightest degree to endanger the lives or limbs of the pas-
sengers, and that for this purpose, they were bound to avail themselves of all the discoveries of
science or the knowledge derived from experience applicable to the subject, and were under the
obligation to employ sober, skillful and competent servants.

3d. That if the Jury believed that the cars run off the track in consequence of the disarrange-
ment of the switches, and that the switches might have been kept in proper order by having a per-
son stationed at them, it was the duty of the company to employ such person for that purpose;
and that their failure to do so, was one of those cases of negligence and imprudence mentioned in
the Article 2295, C. C.

4th. As to the damages, he charged that the Jury were to estimate them according to the princi-
ples laid down in the third section of Article 1928 of the Civil Code, which he read to the Jury, and
the case of *Hermington* v. *Smithers*, 131 Eng. Com. Law Rep., having been referred to by defend-
ant's counsel; he also read the instruction of Abbott, C. J., to the Jury in that case, and stated to
them that in his opinion, it only went to the extent of denying that vindictive damages should be
given, and in that he concurred. That they were bound to estimate the damages according to the
principles of equity and common sense, and the probable loss past and prospective to the plaintiff
if they found any damages at all.

5th. Having been requested by the counsel for defendants to charge the Jury that if the boy
*Alexander*, contributed to his own injury, they could not find for plaintiff—the Judge so charged
them—but remarked that the being in one passenger car instead of another, could not be considered
as contributing to his own injury, for he had the right to go in any of them, unless positively pro-
hibited by the rules of the company, known and published, and the company was equally bound for
the safety of all its cars, and if the Jury believed that at the moment of the accident he was not
sitting in the car but standing on the step, and holding by the window, they were to take all the
circumstances into consideration and consider whether such a position was not rather calculated to
secure his safety than contribute to his injury under these circumstances.

6th. Being requested by the defendant's counsel to charge the Jury that a recovery on the part
of the plaintiff would not bar a future action in behalf of the son, the Judge said that whether
plaintiff recovered or not, such action was barred by prescription of one year, and that the year
had expired.

personne, sans malignité, mais par imprudence cause quelque préjudice à une autre personne. It is, says Duranton, un fait illicite qui nuit à autrui, mais qui a lieu sans dessein de nuire.

The civil actions for both causes is given by the same Article of our Code. "Every act whatever of man, that causes damage to another, obliges him by whose fault it happened, to repair it." Art. 2294.

This Article, brief as it is, distinctly designates the purpose and limit of the action. It is simply reparation—a just and adequate compensation to the plaintiff for the injury received by him from the defendant. It suggests no idea of revenge or punishment.

In this light it is viewed by the jurists of France, whose Code contains precisely the same provisions—tout fait quelconque de l'homme, qui cause à autrui un dommage, oblige celui par la faute duquel il est arrivé, à la réparer. The quasi-offence, says Merlin, imposes upon its author the obligation of repairing the damage which results from it. Wherever the law sees an injury inflicted upon a citizen, it seeks out the author; it enquires if it was possible for him not to have caused the injury; and when it finds on his part carelessness, or imprudence, it condemns him to the reparation of the injury he has caused. The desire of the law is to render a reparation commensurate with the injury.

Toullier speaks to the same purpose. Elle n'exige d'autre satisfaction que le dédommagement de celui qui souffre. Si la faute qui pauvait causer du dommage n'en a point causé, la loi n'inflige aucune peine, à moins qu'une défense de commettre l'action n'eût été portée sous une peine déterminée; car alors a peine dérive d'une desobéissance, d'une contravention à la loi.

The action for the enforcement of penalties, says Duranton, belongs only to functionaries to whom the law entrusts that duty. But the action for reparation of damage caused by a crime or *delit*, can only be brought by those who have suffered the damage. Vol. 13, No. 700 et seq.

The same theory of reparation is adopted by Domat. All the losses and all the damages which may happen by the act of any person, whether out of imprudence, rashness, ignorance of what one ought to know, or other faults of the like nature, however trivial they may be, ought to be repaired by him whose imprudence or other fault, has given occasion to it.

My conclusion is that there is nothing in the provisions of our Code or settled principles of our law which sanctions what are called punitory, vindictive, or exemplary damages, in other words damages which blend together the interests of society and of the aggrieved individual. I think the damages in such actions should be referred to the extent of the wrong done to the sufferer. Where a person other than the immediate sufferer is plaintiff, there is a further necessary limitation already noticed. Where the immediate sufferer is plaintiff, as he is to be indemnified, every circumstance tending to his injury, whether in mind, body or estate, may be taken into view; but considerations cannot be entertained which do not relate to the consequences of the injury to the sufferer. The true issue in the action is the guilt of the defendant and the damage it did to the plaintiff. Criminal punishment is not to be inflicted in a civil action.

There may unquestionably be found in our reports *dicta* which countenance the idea of punitory, vindictive, or exemplary damages; but casual expressions ought not to be relied upon as deliberate expositions of the law. They were

probably suggested by expressions found not unfrequently in the opinions of BLACK
English jurists and commentators; and their force even as exponents of the CARROLLTON R.R.
common law, will be greatly impaired in the apprehension of any one who will
read the very able and learned review by Mr. Greenleaf of the English and
American cases in the recent edition of his treatise on the Law of Evidence.
That author, whose opinion is certainly entitled to great deference, lays down
the rule in these emphatic words: "Damages are given as a compensation,
recompense, or satisfaction to the plaintiff, for an injury actually received by
him from the defendant. They should be precisely commensurate with the
injury; neither more nor less, and this whether it be to his person or estate."
In an elaborate note he defends this proposition, and takes occasion to express
the opinion that the rule of damages as limited by the extent of the injury to
the plaintiff was the same in the Roman Civil Law.

There is nothing in the Article 1928 of our Code which, rightly considered,
conflicts with the above conclusion.

That Article treats of the assessment of damages for breach of contract.
After announcing with qualifications and limitations the general rule that
damages are the amount of the loss the creditor has sustained, or of the gain
of which he has been deprived, it observes: "yet there are cases in which
damages may be assessed without calculating altogether on the pecuniary loss,
or the privation of pecuniary gain to the party. Where the contract has for
its object the gratification of some intellectual enjoyment, whether in religion,
morality, or taste, or some convenience or other legal gratification, although
these are not appreciated in money by the parties, yet damages are due for
their breach; a contract for a religious or charitable foundation, a promise of
marriage, or an engagement for a work of some of the fine arts, are objects and
examples of the rule." Then immediately succeds the following clause: "In
the assessment of damages under this rule, as well as in cases of offences,
quasi-offences, and quasi-contracts, much discretion must be left to the Judge
or jury, while in other cases they have none, but are bound to give such
damages under the above rules as will fully indemnify the creditor, whenever
the contract has been broken by the fault, negligence, fraud, or bad faith of
the debtor."

Applying the rule *noscitur a sociis*, and looking to the context for assistance,
the intention of this clause is easily appreciated. The Code in the previous
clause had treated of cases of damage where the feelings and taste are con-
cerned; damages from their nature not susceptible of accurate and arithmet-
ical computations, yet for which pecuniary compensation was admissible.
Quasi-offences were very properly ranged in the same category, and their com-
pensation submitted to the sound discretion of the Judge or jury, since dam-
ages for mental anguish, or personal indignity or disgrace, &c., are incapable
from their nature of any fixed rule. But the enunciation of this discretion by
no means involves the idea that in the assessment of damages, the court or
jury can travel beyond the enquiry how far the sufferer himself is afflcted, or
exaggerate the amount for the purpose of vindicating offended public justice,
or punishing the offender as an example to others. See also, *McGary* v. *City
of Lafayette*, 4 Ann. 440.