593 So.2d 845 (1992)
Lucille Gandy GUGLIUZZA, et al., Plaintiffs-Appellants,
v.
KCMC, INC., et al., Defendants-Appellees.
No. 23004-CA.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1992.
Rehearing Denied February 21, 1992.
Writ Granted May 1, 1992.
*846 Roland V. McKneely, Bossier City, for plaintiffs-appellants.
Wilkinson, Carmody, Gilliam & Hussey, Shreveport by Arthur R. Carmody, Jr., for defendants-appellees.
Before MARVIN, C.J., and SEXTON, NORRIS, BROWN and STEWART, JJ.
MARVIN, Chief Judge.
Reversing the trial court on reargument before a five-judge panel as mandated by LSA-Const. Art. 5, § 8 B, we conclude that the petition of the widow and major son of the decedent states a cause of action for defamation of their memory of the decedent under CC Art. 2315 and LRS 14:47.
Defamation is the malicious ... expression... of anything which tends: * * * (2) To expose the memory of one deceased to hatred, contempt or ridicule ... LRS 14:47(2)
The widow and son alleged the factual elements of defamation, including the fact that, with others and shortly after the victim was murdered, they saw and heard a telecast by a Shreveport TV station, in which the announcer stated:
There is another possible motive for the death of Sammie Gugliuzza which officers are not talking about. It is rumored on the streets that Gugliuzza had gambling debts and ties to organized crime and that his murder is some sort of a pay-back.
In sustaining the peremptory exceptions against the petition of the widow and son, the trial court relied on Coulon v. Gaylord Broadcasting, 433 So.2d 429 (La.App. 4th Cir.1983), writ denied, which is factually indistinguishable.
Notwithstanding the authority upon which Coulon relied, we conclude that the defendant TV station owed a direct duty to the decedent's widow and son not to make a false and malicious expression that would expose their memory of the decedent to contempt or ridicule and cause them mental anguish damage.
Coulon stems from 19th century fears in the common law about awarding damages for mental anguish. Coulon's Louisiana authority was Pattison v. Gulf Bag Co., 116 La. 963, 41 So. 224 (1906). Pattison's Louisiana authority was Black v. Carrollton R.R. Co., 10 La.Ann. 33 (1855), the taproot of the Louisiana jurisprudence about mental anguish damages.
After Coulon, the taproot, Black, was overruled judicially and legislatively. Lejeune v. Rayne Branch Hosp., 556 So.2d 559 (La.1990); Act 782 of 1991, now CC Art. 2315.6. After Lejeune, Art. 2315.6 governs mental anguish damage suffered by a "bystander" plaintiff to whom only an indirect duty is owed. In that circumstance, the "bystander's" mental anguish arises out of the breach of a standard of care owed directly to the bystander's close relative.
This appeal concerns mental anguish damage allegedly suffered not by bystanders who are owed an indirect duty, but by plaintiffs to whom is owed a special, direct duty created by law. "[T]he Lejeune court *847 did not intend to modify ... recovery for emotional distress from a tortfeasor who owed the plaintiff a special, direct duty created by law ..." Clomon v. Monroe City School Bd., 572 So.2d 571, 575 (La. 1990). Our emphasis.
Lejeune, in our view, is pertinent solely because it squarely overrules Black and its progeny, which, by tracking common law authority for more than a century, ignored our civilian heritage.
Art. 2315.6, codifying most of the Lejeune holding, is important because it amounts to legislative approval that our civilian approach to troublesome areas of tort law be preserved and continued.
We shall attempt to expose the fallacy of the trial court's reliance on the Black- and Pattison-influenced 1983 Coulon holding and to explain why the rationale of Coulon is badly misplaced in 1992.

FROM BLACK (1855) THROUGH PATTISON (1906) TO COULON (1983)
Mr. Coulon brought a defamation action for words a New Orleans TV station telecast about his deceased son. Affirming the sustaining of an exception of no right of action, the court said:
It is basic that the tort action of defamation is personal to the party defamed [citing Prosser]. Relatives, no matter how devoted they may be, have no right to recover for the defamation of another, anymore than they would have the right to recover for the assault of another or the battery of another [citing Pattison v. Gulf Bag Co., 116 La. 963, 41 So. 224 (1906), and other cases]....
Thus, the general rule ... precludes a person from recovering for a defamatory statement made about another, even if the statement inflicts some injury upon the party seeking recovery. An affirmative right to sue in cases of defamation of a deceased person must come from the legislature. We cannot supply that right.
433 So.2d at 431-432. Our emphasis.
As additional authority and rationale, Coulon quoted from the explanatory notes in Restatement of Torts 2d:
Although ... desecration may constitute a crime, there can be no defamation of the dead as the word is used throughout this Restatement. The interest of ... relatives of a deceased person in his good name is not given legal protection by the common law. Therefore, unless a statute so provides, there can be no action for the recovery of damages for words... that reflect unfavorably upon the memory of a deceased person.
433 So.2d at 432. Our emphasis.
Even if the common law prevailed in Louisiana, we have a statute (LRS 14:47) which sets the standard of care owed to living persons and to the memory of a deceased person.

OUR CIVILIAN APPROACH
Common law tort authority may enlighten us, but it should not, and does not, control tort law in Louisiana which stems from our Civil Code Articles 2315 and 2316.
Under these articles the courts ... have been given a broad, general principle of legislative will under which we are required to determine when the interest of society is best served by allowing the act of man which causes harm to be accepted as a proper standard of conduct ... [citing Malone]. Our common law neighbors are required, conversely, to begin with the jurisprudence arising out of specific circumstances and to draw from this jurisprudence a general principle to govern future determinations. It has been said: "* * * The merit of the civilian general principle lies in the fact that the principle is wider than the cases decided and that hence it has within itself the potentiality of growth. [citing Stone]." Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133, 137 (1971).
This broad codal concept of fault, however, does not automatically impose liability for Article 2315's "every act whatever." There must be found an "anterior obligation" creating a standard of care, the *848 breach of which causes damage and makes the act constitute legal or actionable fault. Pitre v. Opelousas Gen. Hosp., 530 So.2d 1151 (La.1988).
The framers conceived of fault as a breach of a preexisting obligation, for which the law orders reparation, when it causes damage to another, and they left it to the court to determine in each case the existence of an anterior obligation which would make an act constitute fault.

530 So.2d at 1156. Our emphasis.
Indeed, it is impossible to anticipate the many circumstances that may arise in society and attempt to legislate specific rules of law to be applied in each circumstance. The legislative mandate, relegating this responsibility and function to the courts under the general rule of Arts. 2315 and 2316, has proved sufficient throughout our history. See authorities cited in Langlois v. Allied Chemical Corporation, supra.
The legislature may sometimes act to modify the effect of a court opinion that states or negates a standard of care not to cause harm to another, or the legislature may not act at all. Notwithstanding its authority, the legislature has not, since our creation as a state, changed the basic delegation of responsibility to the courts to determine what acts of man that cause damage to another are actionable breaches of a standard of care derived from an anterior legal obligation.
Coulon's expression that the parent's "right to sue in cases of defamation of a deceased person must come from the legislature [and not from the courts] ...," while valid under the common law, is foreign to civil law and was then, and especially is now, badly misplaced. Compare Annotation, Civil Liability for Defamation of Dead, 146 ALR 739 (1943). See also 132 ALR 891.
The common law authority or "general rule" stated in Coulon, in any event, is not the law in Louisiana. Contrary to Coulon's general rule, mental anguish damages separate from a visible physical traumatic injury have been allowed by case law for several Louisiana plaintiffs to whom a direct duty was owed. See discussion in Clomon, 572 So.2d at 575. See Nickerson v. Hodges, 146 La. 735, 84 So. 37 (1920), the "pot of gold" case. Compare the basis for mental anguish damages in Dixon v. Mid-South Rail Corp., 580 So.2d 438 (La.App.2d Cir.1991), Clomon, supra, and Devereux v. Allstate Ins. Co., 557 So.2d 1091 (La.App.2d Cir.1990). Specified relatives have been allowed, both by the legislature and by case law, to recover for loss of consortium (Art. 2315), for wrongful death losses (Art. 2315.2), and for mental anguish damage arising out of injury to another. Lejeune, supra; Art. 2315.6.

BLACK'S PROGENY
Coulon's Louisiana authority was Pattison v. Gulf Bag Co., supra (La.1906). We followed Pattison in Elmer v. Coplin, 485 So.2d 171 (La.App.2d Cir.1986), writ denied. Elmer, like Pattison, held that a parent had no right to sue for the defamation of a living child.
In Elmer, we explained that right was "personal" to the living child. Addressing that same issue with no explanation, Pattison cursorily said:
The [father] individually had no standing in court [citing Black v. Carrollton R.R. Co., supra (La.1855), as authority].
Black and Pattison were the law when Elmer was decided in 1986. Pattison and Elmer are factually indistinguishable (parent's right to recover mental anguish damages arising out of alleged defamation of a living child). We do not have that issue in this appeal.
Black and Pattison, although factually distinguishable from Coulon, were the law when Coulon was decided in 1983.
Now that the implant of common law by Black and its progeny has been uprooted from our law, we are called on to consider whether a direct standard of care or duty to protect the memory of a deceased person may be derived from LRS 14:47, which describes the crime of defamation as:
... the malicious ... expression in any manner, to anyone other than the party defamed, of anything which tends:

*849 (2) To expose the memory of one deceased to hatred, contempt, or ridicule...
We must also consider whether that standard of care extends to protect these particular plaintiffs, the widow and son who claim injury to their memory.

SOURCE
While criminal and regulatory statutes that impose punishment are not always definitive of civil liability, they are guidelines which may establish a standard of care for imposing civil liability under CC Art. 2315. Criminal and regulatory statutes have served as the "anterior obligations," the breach of which gives rise to civil liability. Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1970); Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Langlois, supra; Clomon, supra.

DEFAMATION IN LOUISIANA; THE STANDARD OF CARE
LRS 14:47 seeks to deter and to punish malicious expressions made against the living or against the memory the living have of a dead person, and thus imposes a duty or a standard of care that one should not engage in such verbal conduct.
The obligation not to violate that legislatively-created standard of care (CC Art. 2315, generally, and LRS 14:47, specifically) is easily associated with the very foreseeable risk of emotional and mental injury to the memory held of a decedent by his widow and son.
While the "fault" in Art. 2315 is not otherwise defined, its highest degree, as categorized by CC Art. 3506(13) (formerly Art. 3556(13)), is gross fault, inexcusable negligence or ignorance, nearly equal to fraud. A false and malicious expression equates to the highest degree of fault and not to the lesser degrees of slight or very slight fault.
Defamatory words that are false and malicious and that cause damage to another are actionable and impose civil liability for damages under Art. 2315. Cangelosi v. Schwegmann Bros. Giant Super Markets, 390 So.2d 196 (La.1980).
Reparation for mental anguish damage is allowed in defamation actions. Trahan v. Ritterman, 368 So.2d 181 (La.App. 1st Cir.1979). Louisiana courts have long recognized that mental anguish damages are actual damages for which redress may be had (McGee v. Yazoo & M.V.R. Co., 206 La. 121, 19 So.2d 21 (1944)), even without a visible, traumatic physical injury. Nickerson v. Hodges, supra, the "pot of gold" case (La.1920); Clomon, supra.
We again emphasize that Black and its progeny followed common law tort authority and perpetuated well into this century the 19th century fears about allowing recovery for mental anguish damages unconnected with physical impact or injury. See W. Prosser and W. Keaton, Torts, § 54 at 360 (5th Ed.1984).
The Lejeune court said it granted review "because the rulings below [upholding a cause of action for mental anguish damage] are contrary to a long line of jurisprudence in this Court beginning with Black, and to determine whether Black, decided more than a century ago, should be overruled."
556 So.2d at 561. Our emphasis and brackets.
In overruling Black and its progeny, Lejeune expressly noted that the 19th century fears about mental anguish damages "have ... diminished" because "medical advances" in this century have lessened the difficulty in ascertaining such damages and the judiciary has gained experience in distinguishing between valid and fraudulent claims of mental anguish, however arising. It is the responsibility of the courts to discern the difference.
See 556 So.2d at 563.
When a hospital or a mortuary carelessly abuses or handles the body of a decedent, the decedent's widow and children have a cause of action and a right of action for their mental anguish arising out of such abuse or mishandling. See, e.g., Fortuna v. St. Bernard Memorial Gardens, 529 So.2d 883 (La.App. 4th Cir.1988), and authorities cited therein. See French v. *850 Ochsner Clinic, 200 So.2d 371 (La.App. 4th Cir.1967), writ denied. Lejeune explained that such holdings, because of Black and its progeny, were based on a "theory likening the corpse to a property interest of the relatives," a cause of action not "close" to Black. 556 So.2d at 568.
When French and Fortuna were decided one could recover for mental anguish arising out of injury to his property but not arising out of an injury to his loved one or close relative. This incongruous root in the law was removed when Black was overruled.
LRS 8:655, enacted in 1974 to establish which relatives have the right to dispose of a decedent's remains, did not "overrule the prior jurisprudence which gave `near relatives' the right to bring a damage action for distress sustained as the result of the disturbance of the remains of their relative..." Fortuna, 529 So.2d at 885. See and compare Blanchard v. Brawley, 75 So.2d 891 (La.App. 1st Cir.1954) and Thomas v. Mobley, 118 So.2d 476 (La.App. 1st Cir. 1960). Also compare the criminal "desecration of graves" statute, LRS 14:101.
Neither the fact that the alleged damage to the widow and son in this appeal is emotional, rather than physical, nor the fact that the damage arises out of verbal conduct, diminishes the ease of associating the duty not to engage in such conduct with the risk of reasonably foreseeable injury. Every act of man whatever that causes damage to another obliges him by whose fault it happened to repair it [if that act is a breach of a standard of care derived from an anterior legal obligation]. CC Art. 2315; Pitre v. Opelousas Gen. Hosp., 530 So.2d at 1156; Clomon, supra.
Clomon, post-Lejeune, noted that Lejeune recognized that recovery for emotional damage had been allowed where a breach of an "independent duty owed to an aggrieved non-traumatically injured plaintiff" was found [citing cases]. 572 So.2d at 575. Our emphasis. Clomon squarely concluded, "[T]his court is not precedentially bound to apply mechanistically the damage limitation rules of Lejeune to the present case." 572 So.2d at 576.

LEJEUNE AND ART. 2315.6 IN CONTEXT IN THIS APPEAL; CLOMON COMPARED
Mrs. Lejeune was allowed to recover for her mental anguish arising out of her discovery that her comatose husband had been negligently allowed to suffer multiple rat bites while confined in the defendant hospital. Ms. Clomon was allowed to recover for the mental anguish (guilt, etc.) she sustained by running over a child who was negligently allowed to depart a school bus. These holdings were contrary to a long line of jurisprudence that began with Black. These holdings were also contrary to Coulon's "general rule" (relatives have no right to recover for ... defamation ... anymore than they would have the right to recover for the ... battery of another, citing Pattison). In Lejeune, pre-Clomon, the court granted a writ of review to determine whether Black and its progeny "should be overruled." 556 So.2d at 561. It was.
The legislature effectively codified most of Lejeune's holding, but omitted the Lejeune requirement of no-substantial-change-in-the-body-of-the-victim in its 1991 act adopting Art. 2315.6. The legislature spoke only of an "event [or "view" of the result of the event] causing injury to another person" and did not define or limit the word "event" to a physical trespass of the body of a person or define or limit the phrase "injury to another person" to a physically traumatic and visible injury. However the legislative reaction to Lejeune is interpreted, Art. 2315.6 was clearly intended to cover only those mental anguish damages sustained by bystander plaintiffs that arise out of the breach of a civil standard of care directly owed to another person and not directly to the bystander plaintiff.
We need not decide in this appeal whether Art. 2315.6 applies to the allegations of the decedent's widow and son because the standard of care allegedly breached by defendant was owed, not to the decedent, but *851 directly or independently to the widow and son. Clomon, supra; Pitre, supra.
Thus, Lejeune and Art. 2315.6, alone or together, do not squarely apply to or govern this appeal. The supreme court, post-Lejeune, clearly explained that "Lejeune does not govern every class of claim for emotional damage due to third party injury.... In fact, the [Lejeune] court noted with evident approval a number of court of appeal decisions recognizing such an `independent duty owed to an aggrieved non-traumatically injured plaintiff.'" Clomon, supra, 572 So.2d at 575. Our emphasis.
In Clomon, a section of the Motor Vehicle Regulatory Act, LRS 32:80, was held to impose a standard of care for a school bus operator that was owed to Ms. Clomon, a motorist who suffered mental anguish damage because she ran over a child who was negligently allowed to depart the school bus. The breach of the bus driver's independent or direct duty owed to Ms. Clomon was actionable fault giving rise to an award of civil damages, notwithstanding that Ms. Clomon was comparatively negligent (30 percent at fault) in running over the child.
Clomon was not, and the case here appealed is not, a "bystander" case controlled by Lejeune. Clomon clearly explained:
In formulating rules to establish a guaranty of merit for this broad class of claims, the Lejeune court did not intend to modify or interrupt the development of rules or decisions permitting recovery for emotional distress from a tortfeasor who owed the plaintiff a special, direct duty created by law, contract or special relationship.
572 So.2d at 575.
We paraphrase with brackets the third from the last paragraph of the majority opinion in Clomon:
Consequently, we conclude that in the narrow class of cases involving the direct, special statutory duty owed to [the decedent's widow and son, whose memory of him is alleged to have been defamed], there is no justification for the creation of juristic limitations upon the principle of reparation underlying Civil Code Article 2315. Accordingly, [these plaintiffs] should be permitted [their day in court to prove the elements of defamation of their memory of the decedent].
572 So.2d at 578.
Clomon's LRS 32:80, a regulatory statute which punishes defined conduct, is different from LRS 14:47, which punishes defamation, only in the degree of the punishment for the respective conduct. Both statutes set a standard of care to protect some plaintiffs, the breach of which should impose civil liability. Conduct which is punishable to some degree under the law creates a standard of care imposing civil liability unless the court finds economic, social, moral or other policy reasons that excuse liability. Pierre v. Allstate Insurance Company, supra; Finley v. North Assur. Co. of America, 476 So.2d 837 (La. App. 2d Cir.1985); Robertson, Reason versus Rule in Louisiana Tort Law: Dialogues on Hill v. Lundin & Associates, Inc., 34 La.L.Rev. 1 (1973).
Resort to the proper analysis and to the civil code articles that relate to offenses and quasi-offenses, allows the conclusion that the act (here the telecast complained of) causing direct damage to the memory of the decedent held by the widow and son of the decedent is a breach of the anterior legal standard of care not to maliciously and falsely make expressions that expose their memory of the decedent to hatred, contempt, or ridicule. CC Art. 2315; LRS 14:47.

CAUSE OF ACTION, DIRECT OR DERIVATIVE? EXTENT OF DUTY?
Some causes of action, whether instituted or not, are personal and abate on the death of the person who has that cause of action. Draper v. Draper, 554 So.2d 79 (La.App. 2d Cir.1989), on rehearing. If a person who has been defamed (LRS 14:47) dies before instituting an action, that right may be personal, as we held in Elmer, and may abate. Our opinion here does not address the defamation of a living person.
*852 On the other hand and if the defamation is of a survivor's memory of a dead person, the right to institute that action lies, not with the dead person who is factually and legally deemed to have no memory, but with his survivor whose "memory" of the dead person is what is defamed. The right of action then is "personal" to the surviving spouse and child. The deceased person simply suffers no damage and is unable to exercise any right of action for defamation of his memory. This concept is consistent with what actions are "personal" and abate on death. CCP Art. 428.
Accordingly, we hold that this defamation action is a 2315 action for a breach of the standard of care owed directly and independently to these plaintiffs, that standard being not to defame the memory they hold of the decedent, and is not a Lejeune-derivative or "bystander" action for breach of an indirect duty owed to them. Clomon, supra.
Our holding is also consistent with the limited category of plaintiffs who are given a derivative right of action in cases of wrongful death, of loss of consortium, and of mental anguish arising from injury to another. Lejeune, supra. Our holding is otherwise uncluttered procedurally or substantively, by either or both Lejeune and Art. 2315.6, which control mental anguish suffered by bystander-plaintiffs arising out of "injury to another person," that other person being the one to whom an independent, direct duty is owed.
Any other result simply would allow one who would maliciously defame another to await the death of that person and thereafter speak, with impunity, the malicious words that damage the memory held of the deceased person by his loved ones. The injury is not to the deceased person, but to the memory held of the deceased person by a living plaintiff.
We are not referred to any policy reasons to sanction an otherwise absurd result, other than reasons which stem from 19th century common law. No persuasive reasons are suggested to us.
Mental anguish damage caused to one's memory of a living person who is defamed may be repaired by that living person's successful personal action in defamation.
The damage caused to one's memory of a deceased loved one cannot be repaired other than by an action brought by a living survivor. A widow and child are among the limited categories of plaintiffs who have similar rights of action for loss of consortium, for wrongful death, and for mental anguish damages arising out of injury to another.
Lejeune noted that the 19th century fears about mental anguish damages "have... diminished" in this century because of valid reasons.
One's obligation not to speak falsely and maliciously about a living person is a legal obligation the breach of which is actionable.
The breach of one's obligation not to speak falsely and maliciously about a deceased person should also be actionable and afford a right of action to the surviving spouse and son of the decedent whose memory of the decedent suffered damage.
In the circumstances of this case as we approach the 21st century, we find without foundation in law or in fact, the "several perceived fears" that were recognized in the 19th century as a basis for denying recovery for serious mental anguish damage, however tortiously inflicted. The legislature has set the standard of care that one should not falsely and maliciously damage the memory of a deceased person. Where a direct duty is owed, we need no longer resort to considerations about "physical impact" or "zone of danger" to allow mental anguish damages to be claimed. This duty extends to these plaintiffs, the widow and child of the decedent.

CONCLUSION
Our "memory" of Black, through Pattison and into Coulon's common law rationale regarding the issue in this appeal, has been intentionally "defamed," judicially and legislatively, after more than a century. This "overruling" or eradication was *853 not maliciously, but deliberately and properly, done judicially and was thereafter ratified legislatively. Without malice, we add: "Good riddance, rest in peace."
The Restatement quote in Coulon, supra, 433 So.2d at 432, applies only in common law jurisdictions:
The interest of ... relatives of a deceased person in his good name is not given legal protection by the common law. Therefore, unless a statute so provides, there can be no action [in a common law jurisdiction ] for the recovery of damages for words ... that reflect unfavorably upon the memory of a deceased person. Our emphasis and brackets.
In our civil law jurisdiction, the Coulon quote of that rationale in 1983 was not, and certainly is not now, correct.
Clomon applies to this action more so than does Lejeune or Art. 2315.6. However this action is categorized, defendant has allegedly breached the standard of care not to defame the memory of a deceased person. That duty is owed to, and that memory is held by, decedent's widow and son who are undeniably in the class of plaintiffs who are allowed to recover mental anguish damage, "without stint or cabined by ... juristic ... [or] prophylactic limitations." Clomon, 572 So.2d at 576, 578.
In the light of the authorities mentioned and without belaboring the analysis, we find that plaintiffs have alleged facts sufficient to infer cause in fact, an anterior, direct duty or standard of care (here of legislative origin) designed to protect these plaintiffs, breach of that standard of care, and mental anguish damage to the memory of the decedent held by these plaintiffs.

DECREE
The judgment appealed is reversed and judgment is hereby rendered overruling the peremptory exceptions filed against the petition of plaintiffs. Costs here and below arising out of the hearing on the exceptions are assessed to defendants.
REVERSED, RENDERED, AND REMANDED FOR TRIAL.
SEXTON, J., dissents and assigns written reasons.
SEXTON, Judge, dissenting.
It is clear from the majority opinion that while the facts of this case will not conveniently fit into either Clomon v. Monroe City School Board, 572 So.2d 571 (La. 1990), or Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990), the expansion of tort doctrine which it represents is clearly influenced by those two cases. As is clear from Justice Dennis's additional concurring remarks in Clomon, supra, at 583, judges there and here are expanding tort doctrine for what they believe are good reasons.
I respectfully dissent because I agree with Justice Cole's additional dissenting remarks in Clomon, supra, at 587. Clomon, Lejeune, and the instant case represent a significant expansion of tort doctrine. Such expansions involve questions of policy which have serious economic repercussions across a broad spectrum of society. These kinds of changes are better suited to the legislative arena. Said most simply, judges should not significantly change the law because they think it ought to be something else.
Parenthetically, I note that the Clomon plaintiff under current law has no cause of action. The legislature agreed with Judge Norris's dissent in our second Clomon Clomon v. Monroe City School Board, 557 So.2d 1100 (La.App. 2d Cir.1990) (Norris, J., dissenting at 1108)and severely limited the class of persons who could recover from emotional distress caused by viewing an accident. See Act 782 of 1991 enacting LSA-C.C. Art. 2315.6.

APPLICATION FOR REHEARING
Before MARVIN, C.J., and SEXTON, NORRIS, BROWN and STEWART, JJ.
Rehearing denied.