dissenting, agreed with the majority of the court that, as the accident had imposed upon the father a large pecuniary liability, for medical and surgical aid, and had required him to devote his time and attention to his son, to the sacrifice of his business, he ought to be permitted, so far as he made proof, to recover on these counts; but he doubted whether more should be allowed, and he was of opinion that at all events nothing more (nor, in fact, so much) had been proved. Proceeding to consider the question of injury to feelings, he said:
“I do not think the father’s mental suffering should be an element in the assessment of damages in his favor. This would be extending, without a sufficient legal ground, the exception to the general rule that actions for injury to the person are personal. Moreover, let us bear in mind the difficulty which would result from recognizing the mental suffering of the third party as an element of damage. Where is any but an arbitrary limit to be found in extending its benefit? Could an action for damages on that ground, if allowed to the father, be refused to the mother, the brother, the sister? The subject was recently considered in England, in an action by a widow for damages by reason of the killing of her husband, brought under the statute of 9 and 10 Victoria, by which, in such actions, it was enacted that: ‘The jury may give such damages as they may think proportional to the injury resulting from such death, to the parties, respectively, for whose use such actions shall be brought.’ The rule, said to be adopted in Scotland, of giving a solatium, for the mental suffering, was held to be inapplicable to the English statute, broad and general as its language is; and the impos-. sibility of .apportioning the damages among the parties entitled to receive them, if they were based upon the mental suffering of the parties, was greatly relied upon by the court as indicating the intention of the Legislature to confine the damages to the actual pecuniary loss of the sufferers. See Law & Equity Rep. 442, Blake v. Midland Railroad Company.” Black v. N. O. & C. R. Co., 10 La. Ann. 33, 63 Am. Dec. 586.
Since the decision thus quoted was rendered, the idea that damages allowed for mental suffering are exemplary, punitory, or vindictive in their character has been very generally abandoned, and they are now recognized by this court and other courts as actual and compensatory. Thus, in .one case, being an action in damages for the wrongful issuance of an attachment, the court, among other things, asked:
“Must actual damages be confined to an absolute pecuniary loss?”
*993 And cited Sedgwick & Greenleaf, to the effect that:
“Injury resulting from the acts or omissions of others, free from any taint of fraud, malice, or willftil wrong, consists: (1) Of the actual pecuniary loss sustained. (2) Of the indirect pecuniary loss sustained in consequence of the pecuniary loss; profits that might have been made; * * * loss of credit; loss of business. <3) Mental suffering, produced by the act or omission in question; vexation; anxiety. (4) The value of time consumed in establishing the contested right. (5) Actual expenses incurred; * * * costs and counsel fees.”
The opinion then proceeds:
“Though, as we have stated, the execution of the writ was not characterized by that harshness and disregard of the interest of the plaintiffs as if prompted by malice, yet it was executed, and illegally executed, and the mode of its execution, though of the mildest kind, was sufficient to have caused great mortification, annoyance, and vexation to plaintiffs, such as the enforced presence of the sheriff’s keeper, for two weeks, in their business establishment, serving as a constant reminder of their being under business restraint and surveillance, unwarranted though it was. Those were proper subjects for the consideration of the jury in estimating damages.” Byrne & Co. v. Gardner, 38 La. Ann. 6.
In Dirmeyer v. O’Hern, 39 La. Ann. 961, 3 South. 132, plaintiff sued for damages for the wrongful execution of a writ of provisional seizure, and, the defendant having died after the suit was begun, it was allowed to be prosecuted against his heirs. In the course of the opinion, the court said:
“It is also urged that the damages given by the verdict and judgment were exemplary or punitory in their character; * * * that they were personal to O’Hern; and that the action to recover them abated with his death. There is no force in this contention. The damages were actual in their character, although of that kind the estimate of which is left largely to the discretion of the jury or court. Giv. Code, art. 1934. We may well conceive that the injury, the suffering, inflicted on Dirmeyer and his family, by the brutal conduct of O’Hern, was as intense and painful as, or, perhaps, more so than, if physical violence had been used and he had actually belabored the man and his wife with his bludgeon. There has been great confusion of ideas, which even, to some extent, is shown in- our own reports, respecting actual and exemplary or punitory damages. The former is often confounded with pecuniary loss and limited to pecuniary loss, and all beyond that, such as injuries, physical and mental, are classed with the latter. This is a mistake. Indeed, were the question an open one, we would hesitate before recognizing this element, of exemplary, punitory, or vindictive, damages, as existing in the civil law. The theory of these kinds of damages is that, after a full indemnity has been found by a jury or a court for the injury suffered, a sum, in addition thereto, may be arbitrarily imposed, to punish the wrongdoer, and, by such punishment, set an example to deter others from the commission of a like offense.”
See, also, Van Amburg v. Railroad Co., 37 La. Ann. 651 et seq., 55 Am. Rep. 517; Caspar v. Prosdame, 46 La. Ann. 38, 14 South. 317; Wimbish v. Hamilton, 47 La. Ann. 254, 16 South. 856; Fitzpatrick v. Publishing Co., 48 La. Ann. 1116, 20 South. 173; Sundmaker v. Railroad Co., 106 La. 111, 30 South. 285; Bourg v. Brownell-Drews Lumber Co., 120 La. 1009, 45 South. 972, 124 Am. St. Rep. 448.
Judge Thompson, in his work on Negligence, after citing cases in which damages were allowed for mental suffering resulting from the nondelivery of telegrams announcing illness or death, says:
“Other courts, take the view that no damages can be recovered for such a default predicated upon a mere injury to feelings, unless — and such a case can hardly 'be conceived — the default has resulted in some physical suffering, which is the, proximate cause of the mental suffering. Those courts which suppose that such damages may be given where the injury is accompanied with physical' pain and suffering have evidently confused the special damages with exemplary damages, having in mind the well-known rule that exemplary damages cannot be recovered in any case where no actual damages have been sustained. But damages, on the ground of injury to the feelings, are not given in those cases as exemplary damages, but as compensatory damages, and in such cases exemplary damages may be given or withheld, in addition, according to the presence or absence of malice, fraud, oppression, or gross negligence. * * *” Thompson on Negligence, vol. 2, § 2479.
“A general reading of this chapter will make it clear, beyond all question, that damages are constantly awarded for the sense of outrage, indignity, and humiliation visited upon a passenger by expelling him from a vehicle of the carrier, although without violence, and although no substantial losses are subsequently entailed upon him as a proximate consequence of the expulsion. If this were not the rule, there would be no right to recover damages for insulting language, or for expelling a passenger in a rude and boisterous manner, or for subjecting a passen *995 ger to the nuisance of riding in a coach with drunken passengers, who use coarse and obscene language in the hearing of the passenger. Some courts adhere, or affect to adhere, to the rule that, although mental suffering alone will not support an action, yet it constitutes an aggravation of damages when they naturally ensue from the wrongful act complained of; and, although this has been applied to cases of the kind now under consideration, yet a very little attention to the subject will make it clear that there is not a trace of sense in the rule which makes the recovery of damages for mental pain and suffering depend upon the fact that there has also been a physical injury. A jury is just as capable of estimating the amount of damages which ought to be awarded for the mental pain and suffering, where there has been no physical injury, as where there has been such injury. * * * It has been held that, where the ejection of a passenger by a train conductor is made in good faith, and without malice, but through an honest mistake as to his duties, the giving of damages-for the humiliation and mortification suffered by the passenger is erroneous. The decision cannot be supported on principle. Damages given on the footing of humiliation, mortification, mental suffering, etc., are compensatory, and not exemplary, damages.” Id. vol. 3, § 3288.
The original article, No. 2294, having, as we have stated, been amended, in 1855, so as to devolve the right of action, of a person dying from an injury received through the fault of another, upon his minor children and widow, or his parents, in default of those first mentioned, and having been amended, in 1884, by conferring upon said beneficiaries a right of action' upon their own account, in addition to that derived from the decedent, this court has had frequent occasion to interpret the article as thus amended, and has more than once specifically held that, in an action by one of the beneficiaries mentioned, suing in his or her own right, for damages caused by the death of the mother, father, husband, or child, the mental suffering of the plaintiff, resulting from the wound to the feelings, loss of society, and of kindly offices, is an element which is to be considered equally with the material or pecuniary loss.
In one ease, the parents sued for damages caused by the drowning of their daughter, a girl of 16, through the negligent handling of a boat asserting her right of action as well as their own, and it was said by the court:
“The daughter whom the plaintiffs have lost was an active girl, full of life and spirits, and of great physical vigor, who assisted in the work which was required about their country home, and _ they might reasonably have expected a continuation of that assistance and of the filial and kindly offices which the deceased, as an affectionate daughter, owed to her parents. The plaintiffs are also entitled to recover the amount which the daughter was entitled to recover, at the moment of her death.” Le Blanc and Wife v. Sweet et al., 107 La. 369, 370, 31 South. 773 (90 Am. St. Rep. 303).
In another case, a widow, having recovered damages for the negligent killing of her husband, brought suit on behalf of her minor children, and, in assigning reasons for the judgment in their favor, the court said:
“The fact that the beneficiaries under the statute are the ‘minor’ children, and not ‘all’ the children of the deceased, * * * indicates clearly that the object of this law * * * was to save them harmless, during their minority, from the loss of the benefits (material and moral) which they would have received had tlieir father lived up to the time of their respective majorities — to provide for their temporary needs, to tide them over to majority under as favorable conditions as they would have been tided over had their father not been killed. * * * The children have been wounded in their affections by their father’s death. They have been, during their minority, deprived of the benefit of their father’s training and advice and of the pleasure and comfort of his society.” Eichorn v. N. O. C. R. L. & P. Co., 114 La. 724, 725, 38 South. 530, 531.
In another case, where the widow, alone, sued for damages sustained by her in consequence of the negligent killing of her husband, it was said:
“In assessing the damages, the distress and mental suffering inflicted upon the plaintiff by the deprivation of her husband’s companionship are, under our law, elements to be considered, and, as her pecuniary loss, resulting from the failure of her husband’s support, is to be made-good, upon the hypothesis that, though engaged in a hazardous occupation, he would have furnished her with such support during the unexpired term of his life, the average duration of which is to be assumed, the question of the amount that should be allowed is impossible of determination upon any scientific basis. The most that the courts can do, in such a case, is to exercise a sound judicial discretion and award such amount as, all the circumstances consid *997 ered, may seem just to both litigants and not unduly oppressive to either.” Dobyns v. Yazoo & M. V. R. Co., 119 La. 82, 43 South. 937.
In another ease, the father sued for damages in his own right alone, alleging:
“That he was greatly attached to his son, and that the anguish and mental suffering caused by the loss of his boy cannot be compensated by the amount sued for, or any amount; but he shows that said defendants should suffer, to the amount claimed, for their reckless disregard of human life and for their criminal negligence which resulted in the death of his boy.”
It was held that the case was not one for the infliction of punitory damages, but that plaintiff was entitled to an award for his mental suffering. Parker v. Crowell & Spencer Lumber Co., 115 La. 463, 39 South. 445.
In a similar case, i. e., where a father sued in his own right, alone, for damages resulting from the death (through defendant’s negligence) of his son, the court, after saying that “it would hardly be contended that A. could recover for any mental disturbance that he might suffer by reason of the maiming, the libeling, the assaulting, or the death of his cousin, his uncle, or his brother,” and, after referring to the doctrine, previously approved by it, that widows, children, and parents may recover damages for mental suffering caused by the negligent killing of their husbands, parents, or children, proceeded as follows:
“Appreciating the fact that the doctrine thus sanctioned should be applied with great circumspection, and should not perhaps extend beyond cases of the character to which it has thus been already applied, we nevertheless find no sufficient reason for receding from the position so taken. — that, under our law, the mental suffering and deprivation caused to a parent by the death, through negligence, of his child, is an element which may properly be considered in an action for damages against the party 'charged with the negligence.” Bourg v. Brownell-Drews Lumber Co., 120 La. 1026, 45 South. 978 (124 Am. St. Rep. 448).
It may be remarked, in this connection, that, in the case thus cited, the present writer, as the organ of the court, appears to have overlooked the important fact that the act of 1884 had specially conferred upon parents (in default of minor children and widow) a right of action for the negligent killing of their children, and to have dealt with the case upon the basis of the law as it stood before the passage of that act, and of the decisions of this court, which had been subsequently rendered. It seems clear enough now, however, that it would have been more in harmony with the jurisprudence of the court, taken as a whole, to have based the decision upon the provision in the act of 1S84, which was thus overlooked. The case referred to was decided in January, 1908, and rehearing was refused in March. In May, following, the General Assembly convened, and during its session passed the act No. 120 of 1908, which, as we have seen (supra), is entitled “An act to amend and reenact Act 71 of the session of 1884, entitled ‘An act to amend and re-enact article 2315 of the Revised Civil Code of 1870,’ ” and which substitutes “children” for “minor children,” provides that, should the deceased leave a widow, together with minor children, the right of action shall accrue to both the widow and minor children; “that the right of action shall accrue to the major children only in those cases where there is no widow or minor child;” that, in default of child, or widow, or parent, the right of action of the decedent shall survive in favor of the brothers and sisters, or either of them; and, that “the survivors above mentioned may also recover the damages sustained by them by the death of the parent, or child, or husband or wife, or brothers or sisters, as the -- may be.”
Recurring, then, to what was said by the court in Hubgh v. N. O. & Car. R. Co. in 1851 (“it appears to us, therefore, that, without a special statute authorizing such actions, they cannot be maintained”), we find that, as to the minor children, the wife, and the parents, one such special statute was adopted in 1855 and another in 1884; and recurring to *999 the view expressed in Bourg v. Brownell-Drews Lumber Co., in January, 1908 (“thus, it would hardly be contended that A. could recover for any mental disturbances that he might suffer by reason of the maiming, the libeling, the assaulting, or the death of his cousin, his uncle, or his brother”), we find that, in July of the same year, the Governor approved the act No. 120 of 1908, which places brothers and sisters in the category of those in whose favor the right of action of one who loses his life through the fault of another survives, and to whom, also, is given a separate right of action for the injury resulting by reason of the same fault. Plaintiffs are therefore before the court by virtue of a special statute, authorizing them to recover the damages which their brother might have recovered at the moment of his death, as, also, the damages which they sustained by reason of his death, through the fault of the defendant, and, as we have seen, the damages recoverable in such cases 'include those resulting from moral as well as material injury, from injury to feelings as well as to purse. It was said, in the case last above referred to:
“As such damages are not in their nature susceptible of exact measurement, it ought to be sufficient for their recovery that the actual relations between the plaintiff in such suit and the deceased on account of whose death the suit is brought were the normal ones which should exist between parent and child or husband and wife.”
So, we say in this case, it ought to be sufficient to entitle plaintiffs to recover for the suffering and loss, other than any pecuniary or material loss, to which they have been subjected by reason of the death of their brother, that the relations between him and them were the normal ones of brotherly affection; and that has been shown. It would serve no useful purpose to further lengthen this opinion by attempting to review the jurisprudence of the common-law states upon the question at issue. As a general rule, it may be said that the courts, interpreting the statutes of those states, and adhering to the doctrine established in the English case of Blake v. Midland Railway Co., 18 Q. B. 93, award damages only by way of compensation for pecuniary loss resulting from a death. There are, however, many exceptions whereby the surviving wife, or husband, or relative, to whom a right of action is given, is allowed to recover over and beyond any actual pecuniary loss sustained. Judge Thompson says upon that subject:
“In some states, notably Kentucky, California, and Texas, the allowance of exemplary damages is expressly authorized by statute. In' Missouri, the statute provides that, ‘in every such action the jury may give such damages as they may- deem fair and just, * * * having regard to the mitigating or aggravating circumstances attending such wrongful act, neglect or default.’ Under this statute, the amount of damages is not limited to the actual pecuniary loss suffered in the death of the child; the court says that ‘such a construction would make the words (of the statute, italicized) wholly meaningless and inoperative.’ The Alabama statute allows a recovery ‘of such damages as the jury may assess,’ and the courts of that state construe this statute to authorize exemplary damages. * * * ” Thompson on Negligence, vol. 6, § 7080.
& ❖ '•£ s*c # >Je #
‘iln states where the statute allows the jury to award such damages as they may ‘think proportionate to the injury,’ the jury is not confined to the pecuniary loss, but may allow for the loss resulting from grief or mental suffering of the beneficiaries.” Id. 7082.
Mr. Sutherland, among other things, says:
“On many questions respecting the recovery of damages for mental suffering or nervous shock, the law is in a very unsatisfactory state; it being impossible to harmonize the decisions or formulate any rule based on them. Many of the objections to recovery are devoid of real weight, assuming that the suffering or shock was the natural and proximate result of the wrong done. * * * Occasionally, a court asserts that the .recognition of the right of recovery in cases of this class would crowd calendars, and open the door to fraud. It may not be asserted with much confidence that such results have been experienced in jurisdictions in which the right is recognized. But, if the first result should follow, it may be pertinent to inquire what are the reasons for establishing and maintaining the judicial establishments. * * *
“Mental suffering is an element of damage in many classes of actions, and it has not been *1001 seriously contended that the common sense of jurors has erred grievously, if at all, in awarding compensation for it. The courts are almost agreed in denying redress for sympathetic mental suffering. Thus, a father cannot recover for grief and anxiety on account of mere physical injuries sustained by a child, nor because of solicitude for his and his child’s safety. * * * As long ago as 1808, Lord Ellenborough charged a jury, in an action brought by a husband to recover for the loss of the comfort, fellowship, and assistance of his wife, and the grief, vexation, and anguish of mind he had undergone by reason of' her injuries and subsequent death,, that they could only take into consideration the bruises which he, himself, had sustained, and the loss of his wife’s society and the distress of mind he had suffered on her account, from the time of the accident to her dissolution.”
The author then refers to a ease where a husband brought suit for damages for mental suffering resulting from surgical malpractice in the performance of an operation on his wife, in which Ohristiancy, X, among other things, said:
“The chief cause of plaintiff’s distress of mind must have been the death of his wife, in which the injury resulted, rather than the pain she suffered during the operation and prior to her death; and it would be a' very difficult thing for a jury to apportion his mental agony or to determine how much of it was attributable to one of those, causes and how much to the others. If the plaintiff has a right of action on account of his wife’s suffering, why may no't another of her relatives, who may have sustained as much mental agony on the same account as the husband?” Sutherland on Damages, (3d Ed.) vol. 1, § 96.
The unsatisfactory state of the law, to which the author refers, is demonstrated by the authorities collected in the notes to the cases of Eichorn v. N. O. & Car. R. Co., 114 La. 712, 38 South. 526, 3 Am. & Eng. Ann. Cas. 103; Rhoads v. Chicago & A. R. Co., 227 Ill. 328, 81 N. E. 371, 11 L. R. A. (N. S.) 623, 10 Am. & Eng. Ann. Cas. 111.
The difficulty which the courts have encountered seems to have originated in the common-law rule that an action would not lie in a civil court to. recover damages for the. death of a free human being, though the common law afforded a remedy, by the “appeal,” which, as Blackstone informs us:
“Was an accusation by a private subject against another for some heinous crime, demanding punishment on account of the particular injury suffered rather than for the offense against the public? It had its origin in those times when a private 'pecuniary satisfaction, called weregild, was constantly paid to the party injured, or his relations, to expiate enormous offenses.” Blackstone, vol. 4, p. 383.
And then there came what may be called the question of convenience. As Slidell, G. X, says, in the ease of Black v. Ry. Co., supra, referring to the decision of the English court in the leading case of Blake v. Railway Co.:
“The impossibility of apportioning the damages among the parties entitled to receive them, if they were based upon the mental suffering of the parties, was greatly relied upon by the court as indicating the intention of the Legislature to confine the damages to the actual pecuniary loss of the sufferers.”
In other words, it is not so much that the courts have not felt that mental suffering, as well as physical suffering and pecuniary loss, is an element of damage for which the sufferer should be compensated, but the idea was that, if every one who might be made to suffer mentally, by reason of an injury to, or the death of, another, were to be allowed to recover for such suffering, the courts would be crowded with the relatives, direct and collateral, of the party injured or killed, and, perhaps, by the friends also, and that, as between the wife and children, and grandparents, and uncles and aunts and cousins, near and remote, it would be impossible to apportion any amount for which the wrongdoer could reasonably be condemned. Those difficulties do not, however, appear to us to stand in the way of a recovery, in this state, in a case such as we are now considering. The law, in terms, declares that certain specified persons, the one in default of the other, may recover, from him by whose fault it happened, the damages, which they may have sustained by reason of the death of a free human being. The fact that the bene *1003 ficiaries specified are not given a concurrent right, but that major children can recover only in default of minors and widow, that parents can recover only in default of the two classes mentioned, that brothers and sisters can recover only in default of all the others, and that no one can recover to whom the statute has not given the right, limits the number of persons by whom such right may be exercised within reasonable bounds and makes it an easy matter to apportion the amounts to be awarded, if it can be said that there is an apportionment when each sufferer recovers upon the merits of his, or her, own claim. As to the assessment of the damages, we have already noted that, in cases of this kind, our law vests “much discretion” in the judge or jury. Civ. Code, art. 1934, par. 3; Caspar v. Prosdame, 48 La. Ann. 40, 14 South. 317; Taylor v. Ellington, 46 La. Ann. 375, 15 South. 499. In the exercise of that discretion we fix the amount to which plaintiffs are entitled, on the cause of action which survived the decedent, in their favor and by reason of his physical suffering at $1,000.
As to the amount which should be allowed for the mental suffering inflicted on plaintiffs by reason of the untimely death of the brother, though Mr. Justice LAND and the writer are of opinion that something more substantial might reasonably be allowed, the Chief Justice thinks that the damages should be nominal, and, as there are but three members of the court to concur in the decree, we have concluded to fix the amount to be allowed on this count at $50, making a total of $1,050. It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by reducing the principal amount for which the defendant is condemned from $5,000 to $1,050, and, as thus amended, affirmed.
It is further decreed that plaintiffs pay the costs of the appeal.
SOMMBRVILLE, J., takes no part herein. See dissenting opinion of PROVOSTX, J., 55 South. 653.