557 So.2d 1091 (1990)
Daniel R. DEVEREUX, et al., Appellee,
v.
ALLSTATE INSURANCE COMPANY, Appellant.
No. 21305-CA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1990.
*1093 Shotwell, Brown & Sperry by Marshall T. Napper, Monroe, for appellant.
J. Michael Rhymes, Monroe, for appellee.
Before HALL, NORRIS and HIGHTOWER, JJ.
NORRIS, Judge.
The plaintiff, Daniel Devereux, sued Allstate Insurance Company for general and special damages resulting from a vehicular-pedestrian collision. Devereux, the driver, claimed to have been injured in the accident. Allstate's homeowners policy, it was stipulated, covered the negligent acts of the pedestrian, Robert Patterson. After a bench trial the district court, in written reasons for judgment, concluded that Devereux was 10% at fault in causing the accident, and Patterson 90%. The court awarded special damages of $3,138.62 and generals of $17,500, subject to reduction for Devereux's percentage of fault. Allstate appeals, urging the district court erred in allocating fault and in awarding damages for mental anguish over the injury and death of an unrelated third person; it also urges the general damages are excessive. Finding the trial court erred in its allocation of fault, we amend the judgment to reflect that the plaintiff is entitled to 50% of his recoverable losses. Also finding merit in Allstate's argument as to mental anguish, we are constrained to reduce the quantum. The judgment is therefore amended and rendered.

Facts
In September 1987 Devereux was manager of the Pizza Hut Restaurant in Ruston. He lived in Swartz, northeast of Monroe. Early on a Sunday morning he was commuting home from work; an unusually large crowd after the NLU-Tech football game had kept him at work until 2:30 a.m. Driving his 1978 Chevrolet van, he took Interstate 20 east from Ruston, passed through Monroe and took the Hwy. 594 exit east of town. Heading north, he crossed U.S. Hwy. 80 (where Hwy. 594 turns into Love Rd.), passed a subdivision and came to a sparsely settled and poorly lit stretch of road. He was driving within the speed limit. A car or truck with its brights on came up from behind at a high speed and began to pass him. Before it had completely overtaken Devereux's van, the passing vehicle began to cut into the right lane. Devereux edged to the right but did not leave the pavement.
Suddenly Devereux saw a man standing on the road. The pedestrian was Patterson, darkly clad in a black shirt, jeans and a brown cap; he was standing, by Devereux's estimate, six to 12 inches to the left of the right-hand "fog line," or white stripe at the edge of the road. Because the passing vehicle was to his left, Devereux could not swerve to avoid Patterson. He slammed on his brakes and almost instantly hit Patterson, who left a dent in Devereux's front grille about 18 inches from the passenger side. On impact the van was tugged to the right and went onto the shoulder. Devereux then yanked the van to the left and went into a skid across the road. Patterson's body, which had come *1094 through the windshield, was tossed back out and landed in a ditch on the east side of the road. The van swerved 180° and came to rest facing south in the southbound lane. The "phantom vehicle" sped north on Love Rd. and was never identified or found.
Lt. Charles Heard of the state police arrived at the scene at 3:46 a.m., within one minute of the accident. Patterson was found and pronounced dead at the scene. Lt. Heard measured the van's tracks and skid marks; the van's right tires went seven inches off the pavement and rode alongside for 34'3". He could not determine the point of impact from the physical evidence, but accepted Devereux's statement that he did not leave the road until he hit the pedestrian. Lt. Heard testified that Patterson's conduct was the primary cause of the accident; he also cited "possible" obscurement due to the passing vehicle's lights and maneuvers.
Devereux admitted drinking half a can of beer before he left Ruston; he had thrown away the can an hour earlier at a rest area along the interstate. His blood alcohol was tested at .00%. Patterson, whose disabled car was found a few miles south down Love Rd., was tested at .08% post mortem.
Allstate's accident reconstruction expert, Mr. Ray Herd, testified that if Patterson was standing six to 12 inches inside the fog line (as Devereux testified), and if he left a dent 18 inches from the edge of the van, then Devereux must have left the road surface before impact. In Mr. Herd's opinion, Devereux's conduct in riding on the shoulder impaired his ability to avoid the pedestrian. He also felt that if Devereux had been in the middle of his lane, there would have been ample room to avoid a pedestrian standing only 12 inches inside the fog line. Mr. Herd added that the flashing lights from the passing vehicle would have enhanced the view ahead, not obscured it; Devereux should have seen Patterson long before he actually did. On cross examination he admitted his theory was based on the assumption that Devereux was already off the road when the impact occurred; this was contrary to Devereux's testimony.
Upon impact Devereux was thrown against the engine dash of the van, resulting in a severe bruise to his right shoulder; the trial court found he could not lift a pen for several weeks. His orthopedist, Dr. Nawas, performed several tests to rule out serious injuries such as a fracture or a torn rotator cuff; he ultimately diagnosed a sprain and a bruised right shoulder. Because of lingering stiffness, Devereux attended therapy for about two months. He almost immediately began to suffer psychological problems after the accident. He complained of recurrent nightmares which would wake him up screaming in the early morning hours. His mother corroborated this. Devereux was afraid to drive for a few weeks and developed a fear that his three young children might be standing near the road; he described his general condition as "mental havoc." His former wife testified that the accident suppressed his prior eagerness and enthusiasm, subjected him to mood swings and dampened his ambition to move up in the Pizza Hut organization. At the time of trial Devereux had quit Pizza Hut and was performing inspections for an insurance company. Six months after the accident Devereux saw a psychiatrist, Dr. Sherman, who took a case history and noted a mild "adjustment disorder with anxious moods." Dr. Sherman suggested counseling, which Devereux did not attend; based on a personal experience involving his own brother, he remarked, "I doubt you ever really get over killing somebody."

Action of the trial court
The trial court stated that the law applicable to a collision between a motor vehicle and a pedestrian is comparative negligence. LSA-C.C. art. 2323; Turner v. NOPSI, 476 So.2d 800 (La.1985). Analyzing the facts, the court accepted Devereux's testimony that the van was completely in the right lane, where it was entitled to be, when the collision occurred; it left the pavement only after impact. The court rejected Mr. Herd's contrary reconstruction of the accident. The court also accepted Devereux's statement that he was moving to the right at the time to avoid the passing vehicle. *1095 The pedestrian, however, was violating a statute that required him to walk on the left side of the road or shoulder if no sidewalk is provided, LSA-R.S. 32:216 B. He was walking on the right side of the highway and wearing dark clothes; he had consumed some alcohol. These acts were a cause in fact of the accident. Devereux nevertheless owed the duty to maintain a proper lookout for anyone who might be in peril on the road. The court therefore assessed 10% of the fault to Devereux and 90% to the pedestrian. No fault was assessed to the phantom vehicle.
As for damages, the court found that Devereux's physical injuries were painful and sometimes excruciating, but were temporary and had completely abated. By contrast, his mental anguish, grief, mental confusion and self-contempt were serious and potentially long-lasting. For all physical and emotional damage the court awarded $17,500. The proven specials included property damage to the van (broken windshield, radiator and air conditioner), a wrecker fee, medical clinic bills and Dr. Sherman's bill, for a total of $3,138.62. The entire award was subject to reduction for Devereux's percentage of fault. Allstate appealed suspensively.

Allocation of fault
By its first assignment Allstate urges the trial court erred in allocating fault between the plaintiff (10%) and the pedestrian (90%) and in failing to allocate any fault to the "phantom vehicle." Allstate asserts that a motorist owes a high duty to see pedestrians who might be in danger in an unexpected location, citing both Baumgartner v. State Farm Mut. Auto. Ins. Co., 356 So.2d 400 (La.1978) and Turner v. NOPSI, supra; this high duty and the superior instrumentality of the car would counsel in favor of assigning more fault to Devereux, perhaps 75%. Allstate also argues, contrary to its expert's position at trial, that the phantom vehicle's erratic maneuvers were partly the cause of the accident; citing Tennis v. Hartford Ins. Co., 523 So.2d 278 (La.App. 2d Cir.1988), it suggests "more than one-half of the fault" should go to the phantom vehicle.
Findings of the respective percentages of fault under LSA-C.C. art. 2323 are factual findings, just as the finding of contributory negligence was factual under the prior law. Appellate courts will not disturb such findings unless, for well articulated reasons, they are determined to be clearly wrong, manifestly erroneous. Towns v. Georgia Cas. & Sur. Co., 459 So.2d 124 (La.App. 2d Cir.1984); Varnado v. Continental Ins. Co., 446 So.2d 1343 (La.App. 1st Cir.1984); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). Different factfinders may often render dissimilar apportionments of fault. Towns v. Georgia Cas., supra.
We have carefully considered Allstate's argument as to the phantom vehicle and conclude that it has merit. The phantom driver, according to Devereux's uncontradicted testimony, was speeding down Love Rd., shining his brights in Devereux's mirrors and passing him suddenly. This conduct easily could have distracted Devereux from watching the road ahead, and probably accounts for Lt. Heard's poorly phrased finding of "visual obscurement." Devereux testified that the phantom vehicle began to cut into his lane before it had completed the passing maneuver. This describes a violation of a safety statute that requires a passing vehicle to travel a safe distance before returning to the right lane. LSA-R.S. 32:73(1). The phantom driver's conduct forced Devereux from a position in the middle of the road that would have afforded a margin of safety for someone standing near the shoulder. In sum, all the evidence supports a finding that the phantom vehicle's conduct was a causative factor in this accident and was a breach of duty to the plaintiff. Tennis v. Hartford Ins. Co., supra; Wilhite v. Beavers, 227 So.2d 919 (La.App. 2d Cir.1969). In fact, the phantom driver's conduct posed a greater risk than the pedestrian's.
The trial court is authorized to assign fault to a negligent person, "whether party or not," if the evidence supports it. LSA-C.C.P. arts. 1812 C(2), 1917; Varnado v. Continental Ins. Co., supra. Under the *1096 facts presented, the trial court was plainly wrong not to assign some fault to the phantom driver, and we will amend the judgment accordingly. LSA-C.C.P. art. 2164.
The allocation of fault is not a precise science but courts look to various factors for guidance. In Watson v. State Farm Fire & Cas. Ins. Co., 469 So.2d 967 (La. 1985), the Supreme Court considered:
(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. 469 So.2d at 974.
We have carefully reviewed the evidence of each person's fault. For the reasons already enumerated, we feel that a substantial amount of fault should be assigned to the phantom driver.
Under these facts, Devereux's conduct is not as serious as that of the other parties but the assessment of 10% is abusively low. Devereux was driving within the speed limit and in the proper lane of travel. However, he failed to see a pedestrian ahead; a motorist has a strong duty to be on the lookout for what is ahead of him. Tennis v. Hartford Ins. Co., supra; Finley v. North Assur. Co. of Amer., 476 So.2d 837 (La.App. 2d Cir.1985). We recognize that the pedestrian was dressed in a way that made him hard to see and the phantom driver's erratic acts distracted Devereux and probably prevented him from taking evasive measures that could have averted the accident. At night a driver is not held to the highest standard of guarding against unexpected or unusual obstructions in the road. Calais v. Thibodeaux, 220 So.2d 209 (La.App. 3d Cir.1969), writ denied 254 La. 15, 222 So.2d 67 (1969). Under the circumstances, the least amount of fault the trial could have assessed to the plaintiff was 20%.
As for the pedestrian's conduct, the trial court aptly noted that Patterson violated a safety statute designed to protect himself and motorists from various risks of accidents. R.S. 32:216. He also failed to hear the sound or see the lights of Devereux's advancing van and the phantom vehicle and a mild (though not legal) intoxication probably slowed his reactions. However, viewing all the facts, we conclude that a 90% assignment of fault is abusively high. For one thing, Patterson's car had broken down and he probably had little choice but to walk home; his conduct was therefore necessary. Further, the trial court made much of Patterson's failure to walk on the "shoulder" of Love Rd., but our review shows that it was dark, grassy and sloped into a ditch where reptiles were perhaps "still out." R.p. 82. Finally, it was very late and Patterson could have thought that vehicular traffic would be light.
The plaintiff's fault must therefore be raised to 20%. For the reasons already discussed, an allocation of 30% will be assigned to the phantom driver and 50% to Patterson.
The plaintiff's recovery is governed by LSA-C.C. art. 2324, which was amended shortly before this accident (LSA-Acts 1987, No. 373, § 1, effective September 1, 1987). It provides that joint tortfeasors of a negligent offense are joint divisible obligors except for the first 50% of the plaintiff's recoverable losses. As a joint divisible obligor, Patterson's insurer is liable to pay his share, or 50%. LSA-C.C. art. 1789. The judgment will therefore be amended to reflect Allstate's liability for 50% of Devereux's recoverable losses.

General damages
By its third assignment Allstate urges the trial court erred in awarding general damages for Devereux's mental anguish that resulted not from his own physical injuries but from the injuries and death of Patterson. Allstate asserts that Devereux's own physical harm was very slight. It finally concedes that the recent case of LeJeune v. Rayne Branch Hosp., 539 *1097 So.2d 849 (La.App. 3d Cir.1989) (subsequently affirmed by the Supreme Court, see infra) liberalizes the traditional rule against recovery for this kind of loss, but does not allow recovery by completely unrelated parties such as Devereux.
This record poses evidentiary problems. Devereux's petition alleges only that the accident caused him emotional distress, not the knowledge of Patterson's injury and death. Original Pet., ¶ 11. Although it forcefully argues on appeal that mental anguish cannot be recovered for physical injury to an unrelated third person, Allstate never urged this position to the trial court. See Pretrial Statement, R.p. 21. The trial testimony was not developed with the purpose of determining whether Devereux's psychological problems resulted from Patterson's plight, or (less objectionably) from Devereux's own injuries and experience in a violent accident. This record does not even show whether Devereux came in contact with Patterson after the accident. Finally, the trial court awarded general damages to cover both Devereux's own pain and suffering and his "mental anguish," but did not specifically ascribe any of the latter to anguish over the pedestrian's injuries and death. The upshot of this is that if Allstate's position is correct, still the exact dimensions of relief are difficult to trace.
The issue, according to Allstate, is whether Devereux can receive mental anguish damages resulting from the pain, suffering and death of an unrelated third person. Allstate asserts that damages for wrongful death are limited to certain classes of close relatives under LSA-C.C. art. 2315.2. Though Allstate does not cite it, the seminal case in our jurisprudence is Black v. Carrollton R.R. Co., 10 La.Ann. 33, 63 Am.Dec. 586 (1855), which held that a plaintiff cannot recover damages for mental anguish arising from a third person's physical injury.
In LeJeune v. Rayne Branch Hosp., supra, the Third Circuit departed from the ironclad rule of Black, citing recent jurisprudence that undermined Black at least in the context of medical malpractice. See Pitre v. Opelousas Gen'l Hosp., 530 So.2d 1151 (La.1988). The scholarly opinion in LeJeune cites a number of "maverick" cases which, despite the Black rule, have allowed this sort of damages. See, e.g., Holland v. St. Paul Mercury Ins. Co., 135 So.2d 145 (La.App. 1st Cir.1961), and Vidrine v. GEICO, 528 So.2d 765 (La.App. 3d Cir.1988), writ denied 532 So.2d 156 (La. 1988). The court noted both judicial and scholarly criticism of the Black rule. See, e.g., Smith, "Conventional Obligations: Damages for Mental Suffering," 23 La.L. Rev. 275 (1960). The court also noted that modern theory does not treat mental anguish as a punitive award, as it was disparagingly viewed in 1855. Synthesizing all these sources, the Third Circuit concluded that under LSA-C.C. art. 2315 mental anguish for injury to another is recoverable if the plaintiff can prove causation and breach of legal duty under a duty-risk analysis, and if the plaintiff falls within a class of persons entitled to bring a wrongful death action under LSA-C.C. art. 2315.2.
After the instant case was submitted to this court, the Supreme Court affirmed LeJeune. 556 So.2d 559 (La.1990). In the context of duty-risk analysis, the court held that a defendant owes the duty to protect certain plaintiffs from mental anguish damages occasioned by the negligent infliction of injury to another. 556 So.2d at 569.[1] Applied to the instant case, this means Patterson and the phantom driver did indeed owe the duty to protect Devereux from mental anguish resulting from the negligent infliction of injury to another person, *1098 such as Patterson himself. He breached this duty by his negligent conduct. An accident resulted, and the evidence supports the trial court's finding that Devereux's damages were caused by that accident. The plaintiff made the requisite showing for recovery under traditional duty-risk analysis.
The Supreme Court also held, however, that "attendant policy considerations" required additional modifications and restrictions for this type of recovery. These are:
(1) The plaintiff must either view the accident or injury-causing event or come upon the scene soon thereafter and before substantial change has occurred in the victim's condition.
(2) The direct victim of the traumatic injury must suffer such harm that it can be reasonably expected that one in the plaintiff's position would suffer serious mental anguish from the experience.
(3) The emotional distress sustained must be both serious (i.e., severe and debilitating) and reasonably foreseeable to allow recovery.
(4) The plaintiff must have a close relationship with the victim; a spouse may certainly recover, and perhaps close relatives or other persons with "close rapport" with the victim (the court reserved defining the exact class of permissible plaintiffs).
Our initial question was whether the new LeJeune standards should apply to this case. The factors bearing on retroactive application of a judicial decision include whether the new decision establishes a new principle of law either by overruling clear precedent on which the parties have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed; the history of the rule, its purpose and effect, and whether retrospective application will further or retard its operation; and the inequities involved. See Lovell v. Lovell, 378 So.2d 418 (La.1979); Stafford v. Division of Admin., 407 So.2d 87 (La.App. 1st Cir.1981). In the abstract, LeJeune cracked a prohibition and permitted recovery where it had been previously denied. LeJeune nevertheless ratified the vast majority of "maverick" cases which had limited recovery to certain close relatives. We therefore conclude that LeJeune explained the jurisprudence; to apply it retroactively would not work substantial injustice to this plaintiff. Both with the maverick cases before, and with the rationale of LeJeune, the jurisprudence imposed the fourth limitation listed above.
We have reviewed the evidence and have no difficulty concluding that Devereux satisfied the first two requirements. He was at the scene and even saw the victim dashed through the windshield. Patterson's injuries were severe and fatal, easily such as would excite serious mental distress in a third person. The evidence as to the third requirement is close; we might not view Devereux's complaints as debilitating, though we would extend great deference to the trial court's finding.
The fourth factor, however, is fatal to Devereux's claim. Patterson was practically a stranger to Devereux, someone he barely knew at sight. Their relationship is plainly too distant to justify an award of mental anguish.
We have considered whether the tragic happenstance that cast Devereux and Patterson together in an auto accident might be sufficient to create a "close relationship" that would justify recovery. We are sure that their experience together binds them more closely than total strangers. The Supreme Court, however, has announced a very limited right of recovery that this alleged distinction is too small to overcome. The policy is that not everyone who views a recently injured third person should be able to seek recovery for mental anguish. This defeats the instant claim, no matter how trenchant the facts on which it is based, insofar as it seeks damages for mental anguish based on the pedestrian's injury and death.
Allstate is therefore correct in disputing any portion of this award based on Devereux's mental distress over Patterson's injury and death.
This does not, however, end the discussion; as noted above, the general *1099 damage award encompassed all aspects of pain and suffering and mental anguish. The proper remedy is to lower the award to the highest amount that would compensate the plaintiff for the recoverable damages. Coco v. Winston Indus. Inc., 341 So.2d 332 (La.1976); Smith v. Manchester Ins. & Indem. Co., 299 So.2d 517 (La.App. 4th Cir. 1974), writs denied 302 So.2d 617, 618 (La. 1974). A large measure of anxiety and distress arose simply from the fact that he was involved in a frightening, traumatic accident. For instance, Devereux could have seen the pedestrian sooner, swerved and successfully avoided him yet lost control of his van, spun around in the road and suffered a badly bruised shoulder; the pedestrian would have been unharmed, but Devereux could well have developed a temporary paranoia of driving as well as fear of letting his children on the road. The nightmares also appear to have resulted in part from the fright and trauma of the accident, and not totally from Patterson's injuries and death. Only Dr. Sherman clearly stated, and only by way of hypothesis, that some of Devereux's problems resulted from Patterson's death. Under the circumstances, we will analyze the award in light of the recoverable elements of pain and suffering and mental distress.

Quantum
By its second assignment Allstate urges the trial court erred in awarding general damages of $17,500. The argument assumes that Devereux's mental anguish should not have been included at all; for the reasons discussed, we shall attempt to eliminate that portion of the mental anguish award resulting from the contemplation of Patterson's physical condition. In the assessment of damages in cases of offenses, quasi offenses and quasi contracts, much discretion must be left to the judge or jury. LSA-C.C. art. 2324.1. Before an appellate court will reverse an award of damages as excessive, it must find a clear abuse of discretion; only then can meaningful comparison be made with truly similar cases. Coco v. Winston Indus. Inc., supra.
The trial court outlined the physical problems Devereux encountered after the accident. While Allstate characterizes this as "basically" a bruised shoulder, the court viewed it as very painful for several weeks. Residual stiffness and pain persisted for another month or so. Dr. Nawas considered him essentially recovered less than two months after the accident; when he last saw Devereux on November 3, 1987, he did not anticipate any future orthopedic treatment.
Devereux's psychological problems were not contradicted. As already noted, they included nightmares, a fear of driving, loss of ambition and overprotectiveness of his children. While noting these complaints, Dr. Sherman admitted that other factors in Devereux's life, such as marital discord and anxiety over a million-dollar lawsuit filed against him, may have been equally responsible for his problems. At any rate, the complaints had largely abated by March 1988, and Dr. Sherman saw no need to prescribe medication or therapy.
We feel that the instant award of $17,500, for the physical injuries and allowable mental distress described is an abuse of discretion. Under the circumstances, an award of $7,500 for pain and suffering and $5,000 for fright, fear and mental distress (excluding the portion of the claim that is not recoverable) arising from the fact of the traumatic accident, for a total of $12,500, is the highest amount that we could affirm, in addition to the proven specials. The parties have cited cases illustrative of a wide spectrum of possible awards; these are not truly apposite, but the reduced judgment is within their bounds. This aspect of the judgment is amended, and a new judgment will be rendered.

Decree
For the reasons expressed, the first paragraph of the judgment is amended to provide as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of the plaintiff, Daniel R. Devereux, and against the defendant, Allstate Insurance Company, in the sum of Seven *1100 Thousand, Eight hundred, Nineteen and .31/1.00 ($7,819.31) Dollars, the defendant's divisible 50% of the plaintiff's recoverable losses under LSA-C.C. art. 2324; together with legal interest thereon from date of judicial demand until paid.
The judgment is otherwise affirmed. Costs of the appeal are assessed equally to the appellant and appellee.
AMENDED AND AFFIRMED.
HALL, C.J., and HIGHTOWER, J., concur and assign written reasons.
HALL, Chief Judge, concurring.
I concur in the result, that is, the reallocation of fault and the reduction of general damages which I view as excessive, regardless of the applicability of the principles of LeJeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990). However, it is my view that LeJeune is not applicable to this case because LeJeune dealt with recovery by a plaintiff who was not directly injured from a defendant who caused injury to a third person resulting in indirect mental or emotional injury to the plaintiff. Here, plaintiff was directly injured by the defendant as the result of an accident caused by the defendant's breach of a duty owed to plaintiff as a motorist. There was no injury to a third person involved insofar as plaintiff and the defendant pedestrian are concerned. Plaintiff's direct injuries were both physical and emotional, and both have long been recognized as compensable. LeJeune deals with altogether different circumstances and principles and has no applicability. LeJeune expands recovery to a bystander, but establishes certain criteria for recovery. Those criteria are not applicable where the plaintiff was physically involved in the accident.
Further, emotional injury arising out of an accident is the sum total of the experience and is hardly susceptible to being quantitatively analyzed on the basis of what part of the experience caused what part of the injury.
HIGHTOWER, Judge, concurring.
I respectfully concur, pretermitting, however, whether the tenor of LeJeune, supra, recognizes a duty by a pedestrian to protect a motorist from the mental anguish that might be occasioned by that pedestrian's own death.
NOTES
[1] This court had already concluded that safety statutes involving pedestrians create duties that encompass risks of harm both to the pedestrian and to motorists. See Clomon v. Monroe City Sch. Bd., 490 So.2d 691 (La.App. 2d Cir.1986). Thus there is no question that a pedestrian would be liable for property damage that his negligent conduct causes to the plaintiff's car; here Allstate does not contest Devereux's special damages. Because, however, of limitations set forth by the Supreme Court in LeJeune, this writer feels that our prior decision in Clomon is no longer a correct pronouncement of the law.