588 So.2d 1172 (1991)
Vernon HANEY, Jr.
v.
Leonard Ray FRANCEWAR, Alton Lamar Francewar, ABC Insurance and State Farm Insurance.
CA 90 0798.
Court of Appeal of Louisiana, First Circuit.
October 18, 1991.
Rehearing Denied January 3, 1992.
*1173 Thomas B. Waterman, Ponchatoula, for plaintiff-appellee.
Ron S. Maclauso, Hammond, for defendant-appellant State Farm.
James Kuhn, Denham Springs, for U.S. Fidelity & Guar. Co.
Paul Billingsley, Hammond, for Alton Francewar.
Before LOTTINGER, EDWARDS and GONZALES, JJ.
GONZALES, Judge.
This lawsuit arose following several consecutive automobile accidents. The plaintiff, Vernon Haney, Jr., sued the uninsured driver from the second accident, Leonard Ray Francewar, and the uninsured motorists liability insurer of Haney's wife, State Farm Mutual Automobile Insurance Company. None of the parties involved in the first accident were sued, and defendants did not bring them into the suit by a third party demand.
The trial court found: plaintiff was injured in the second accident; plaintiff was not at fault in the causation of the second accident; and plaintiff was covered by the policy of uninsured motorist insurance issued to and in the name of plaintiff's wife, Jocelyn Lee Haney. The trial court awarded plaintiff $20,000 in general damages and $1,410 for medical expenses. State Farm is appealing that judgment, and makes the following assignments of error:
1. The trial court was manifestly in error in failing to find that plaintiff was injured in both of two successive accidents when all testimony indicated plaintiff was injured in both accidents.
2. The trial court erred in failing to apply Louisiana principles of solidarity to a situation where two successive accidents caused injury to a plaintiff but it is impossible to determine what degree of injury either accident caused.
3. The trial court erred in holding one solidary tortfeasor responsible for 100 *1174 percent of the damages awarded to a plaintiff for injuries arising out of solidary negligence.
4. The trial court erred in failing to award a percentage of negligence to each and every solidary tortfeasor whether or not a party to the suit.
5. The trial court was manifestly in error in failing to attribute a percentage of comparative fault to a plaintiff who intentionally and knowingly took himself out of a position of safety and placed himself in an unsafe position in the middle of a narrow road.
6. The trial court erred in holding an uninsured motorist insurance carrier liable for damages when a plaintiff failed in his burden of proving no underlying liability insurance was applicable.
7. The trial court erred in finding an individual who was removed from his matrimonial domicile by his wife was still a resident of his estranged wife's house.
8. The trial court was excessively high in its determination that an amount to adequately compensate a plaintiff for four and a half months of treatment was $20,000.

FACTS
On August 16, 1988, plaintiff, Vernon Haney, Jr., was a guest passenger riding in a van owned by Wendell W. Sanga and driven by Curtis Williams. The van was involved in an accident on Lavigne Road, a two-lane road in Pontchatoula, when the side mirror on the van and the side mirror on a truck owned by Frank Labee, Sr., and driven by Frank Labee, Jr., driving in the opposite direction, collided, shattering both mirrors. Both drivers stopped after the impact and began backing up, whereupon the pickup truck backed into the side door of the van. Haney was rising out of his seat in the van when the truck backed into the van and he was thrown forward, striking his head. Officer Terry Scott with the Tangipahoa Parish Sheriff's Office arrived on the scene and began an investigation of the accident. During the course of the investigation, because the road was narrow and had no shoulders, the officer had all three vehicles moved into the eastbound lane of the road in order to clear the westbound lane for traffic to pass. The police unit was parked in between the other two vehicles. Officer Scott left the others and walked over to his vehicle to retrieve some paperwork. Mr. Haney followed the officer to his vehicle. After the officer entered his vehicle, Haney stood in the road and leaned into the vehicle window to talk to the officer.
Meanwhile, a vehicle driven by Leonard Ray Francewar and owned by Alton Francewar was approaching the scene. The Francewar vehicle slowed down to between three and five miles per hour and maneuvered into the westbound lane to go around the vehicles parked in the eastbound lane. As the Francewar vehicle approached, someone shouted to warn Haney that he should move. Haney turned around and was struck in the shoulder by the Francewar vehicle's side mirror. Haney fell against the police car and then put his hand out in an attempt to break his fall to the ground. Following this second accident, Haney complained of pain in his shoulder, but refused Officer Scott's offer to call an ambulance or otherwise get medical assistance. Haney was given a ride home by Leonard Ray Francewar, the driver of the car which struck him. Officer Scott supplemented his original accident report with a report of this second accident.
Vernon Haney had pre-existing shoulder, neck and knee problems from a work-related accident in 1986 when a cement buggy he was driving flipped over on him. On August 17, 1988, the day after the two accidents on Lavigne Road, Haney kept a previously scheduled appointment with Dr. Watermeier at the New Orleans Orthopaedic Clinic which he had made for treatment of his work-related injury. Haney complained of neck and shoulder pain when he saw Dr. Watermeier. Dr. Watermeier diagnosed sprains, strains and contusions in the neck and shoulder areas and X-rays of those areas were made. Although Haney testified at trial that at the time of this office visit his right foot and hand hurt, the doctor did not record in his notes or recollect any complaint by Haney of hand and *1175 foot pain at this time.[1] Later Haney was seeing a chiropractor for therapy and he asked the chiropractor to look at his hand and foot. The chiropractor took X-rays and following those findings, Haney made an appointment with Dr. Adatto at the same clinic on September 1, 1988. Dr. Adatto found that Haney had a fractured right foot and a fractured thumb. Dr. Adatto put a cast on Haney's right foot, which stayed on for six days. The thumb had already begun to heal.

ASSIGNMENT OF ERROR NO. 1
Officer Terry Scott testified at the trial that Haney complained of being injured from the first accident and the report from the first accident showed Mr. Haney suffered minor injuries in the first accident. Officer Scott testified:
Q. Now in connection with that investigation you have already indicated that Mr. Haney told you that he had been injured in that accident?
A. [Scott:] Yes. When I arrived the first thing I asked was anybody injured, and I think, I am not a hundred percent sure, I think he told me that his shoulder or back or something, he said something was hurting him, I am not a hundred percent sure that was it. And so did the driver if I am not mistaken said that he had minor injuries.
When Haney testified at trial, he said the following:
Q. Were you injured in the first collision?
A. [Haney:] No, I wasn't, just
Q. Can you tell the Court what happened to you?
A. [Haney:] Just by me getting up when he hit the van, I was rising out of my seat on the passenger side. I was sitting right behind the driver and when I was getting up off the seat, he backed up into the door and it just kind of threw me a little bit to the front.
Q. You were sitting in the backseat?
A. No, I was sitting on the side, on the side where the van [sic] have the seats, on the side instead of in the back. I was sitting right behind the driver on the side.
Q. And so you were kind of thrown into
A. Yes.
Q. the driver's seat?
A. Right.
A. Was it padded?
Q. Yes, it was.
Additional questioning of Haney produced the following testimony:
Q. Officer Scott says that you told him that you were hurt after the first accident?
A. No, I didn't tell him that.
Q. You deny that?
A. Yes, I do.
Q. You are saying that Officer Scott is not telling the truth.
A. Well, I told him that, I told him that I had bumped my head.
Q. Sir, I am asking you a question.
A. Yes, I told him that, and I also told him that I had glass in my eye.
Q. So you did tell him that you were hurt?
A. Yes, but I didn'tYes.
Q. You did tell him that you were hurt and you were hurt because of the first accident, is that true or false?
A. I don't understand.
Q. You don't understand my question.
A. No.
Q. I will rephrase my question. Isn't it true that after the first accident and before getting hit by the Francewar vehicle that you told Officer Scott that you were hurt in the accident when you were in Mr. Williams' vehicle.
A. Yes, I told him.

Dr. Watermeier testified as to the first accident:
Q. And when did you first see Mr. Haney?
*1176 A. He was first seen August 17th, 1988. He gave me a history of being inside a van. He was inside of a van on the backseat. He was suddenly thrown forward when the van hit something. He hit his head on a table inside the van.
On cross-examination Mr. Haney was questioned about Dr. Watermeier's testimony:
Q. Now this accident happened on August 16, 1988. You go to the doctor the next day August 17, 1988, is that true?
A. Yes.
Q. Dr. Watermeier indicates in his record that you presented yourself on that day with a history of a new injury. He says that you told him that you were on the inside of a van on the backseat, is that true?
A. Right.
Q. He says that you stood up and was suddenly thrown forward when the van apparently hit something, is that true?
A. Yes.

Q. And you told him that you hit your head on a table inside the van, is that true?
A. Yes, but the thing at the top of the van [sic], you know.
Dr. Watermeier also testified:
Q. Now wasn't itisn't it a fact that there were two accidents on the 16th that Mr. Haney had indicated to you, one being thrown forward in a van, hit his head on a table, and the other being got hit by a mirror on a truck on his right shoulder which caused him to fall and sustain a bruise?
A. Yes.
Q. Is there any way to differentiate between those two accidents as far as this thumbbroken thumb and this broken foot are concerned?
A. No, not from the history given.
Q. Is there any other way?
A. No. I guess you would have to ask the patient when he felt thatwhen he sustained those separate injuries.
Q. But, in fact, didn't the patient himself tell you thator you made a note thatthere was a note made by Dr. Adatto that Vernon had nothad not noticed the broken foot and the broken hand for three weeks, that note made on September 1st, 1988.
A. Yes.
Q. So then there would be no way for him to tell you at which particular time the accident became apparent, that it had caused some injury, or being able to distinguish between those two events and say which accident caused which injury?
A. That's correct.
Q. From your chart, you [sic] note any changes in Mr. Haney for these two accidents that occurred on the 16th of August, 1988, the two accidents which you said you couldn't distinguish which one had caused what injury other than these two new injuries of one being the broken thumb and being the broken foot?
A. No.
Q. He had prior shoulder pain; is that correct?
A. Yes.
Q. And you attribute any newany new pain involved in his shoulder to this accident of the 16th of August, 1988.
A. Based on these physical findings, I can only say that there was an aggravation to his shoulder problem. I can't say that there was any new injury.
Q. And you consider Mr. Haney completely recovered as far as thisfrom this August 16th accident, the accident of August 16th, 1988?
A. Regarding his foot and thumb problem, yes.
Based upon careful consideration of the evidence in the record, this Court finds the trial judge committed manifest error in finding plaintiff was not injured in the first accident. This finding of manifest error, however, is not dispositive of the case sub judice. It is only a finding of multiple causation. The ultimate ruling in this case must rest on the analysis of the remaining assignments of error.

ASSIGNMENTS OF ERROR NO. 2, 3 AND 4
These assignments of error address the same issue and will be discussed together. *1177 The new Louisiana law of solidarity, under La.C.C. art. 2324, as amended by Acts 1987, No. 373, section 1, became effective on September 1, 1987. The accident date in this case, August 16, 1988, is after the effective date of Act 430, so the new solidarity law applies to the present case. The only case cited by the parties in their briefs to this court interpreting new article 2324, and independent research revealed no other, is Devereaux v. Allstate Insurance Company, 557 So.2d 1091 (La.App. 2d Cir. 1990). Devereaux presented a slightly different fact pattern. In that case, there was a phantom driver who was never identified and therefore was not a party to the suit, but the phantom driver was assessed a percentage of fault which reduced plaintiff's recovery. In the case sub judice, we have non-party tortfeasors, the drivers of the vehicles in the first accident, who were not sued by plaintiff and who were not brought in by defendants, yet defendants are claiming those non-parties should be assessed a percentage of fault for plaintiff's injuries.
In the case sub judice, when the trial judge herein found plaintiff sustained his injuries in the second accident, implicit therein is the finding that he was only injured in the second accident, or that any injury complained of was not a result of the first accident. We believe that finding is manifestly erroneous. The testimony showing plaintiff was injured in the first accident was unrefuted: Haney told the investigating officer he was injured in the first accident; Haney told Dr. Watermeier he was injured in the first accident; Dr. Watermeier testified that he could not determine which accident caused the injuries; and, Haney admitted on cross-examination that he was injured in the first accident. With this testimony of record, the judge was manifestly erroneous in finding all the causation of the injuries was from the second accident only. However, when it was established that plaintiff's injuries resulted from the negligence of the defendant as well as a third party, the burden shifted to the defendant to show the percentages of fault of any persons, parties or not, who might have been at fault. Because of the close proximity of the two accidents, and the inability of the plaintiff to separate the injuries caused by the two accidents, this is obviously an appropriate case for the application of La.C.C.P. art. 1812(C).[2]Varnado v. Continental Insurance Company, 446 So.2d 1343 (La.App. 1st Cir.1984).[3] Under these circumstances, it is incumbent upon the trier of fact to quantify the fault of all persons involved in the various accidents. Having so decided, the next question then becomes: which party has the burden of proving this fault?
The analysis used by the Louisiana Supreme Court in Raley v. Carter, 412 *1178 So.2d 1045 (La.1982), although pre-comparative and involving settlement with named parties, as opposed to fault of non-parties, appears to be controlling here. In Raley, the defendants relied on the allegations of fault in the plaintiff's petition and failed to prove any fault on the part of the settling parties at trial. In the case sub judice, there are no allegations of fault as to Frank Labee Jr., or Curtis Williams, the drivers in the first accident. In all cases cited in Raley, when the Louisiana Supreme Court approved a reduction in the damages collected by the plaintiff, there was an actual finding of negligence on the part of the released tortfeasors, proven by a preponderance of the evidence at trial, or, there was an unfair impairment of defendant's ability to prove such negligence by last minute settlements during trial. In those cases cited in Raley, first, Banks v. Maher, 177 So.2d 412 (La.App. 4th Cir. 1965), and second, Wall v. American Employers Insurance Company, 386 So.2d 79 (La.1980), it was clear that the defendants had the burden of proving the negligence of released parties. The Raley court squarely held that "[a] pre-trial settlement shifts the burden of proving negligence on the part of the parties released from the plaintiff to the remaining defendants." Raley v. Carter, 412 So.2d 1045, 1047. The same is true here; where non-parties are claimed to be at fault in causing damages, the burden shifts to the defendants to show not only the fault of the non-parties (or phantoms), but the percentage thereof. To find otherwise would fly in the face of the Raley rationale:
Nor would we require a plaintiff to prepare two cases, one to establish the negligence of all named defendants; the other (held in reserve) to establish the lack of fault of any defendant with whom plaintiff may happen to compromise prior to trial. Such a requirement would unduly hamper a plaintiff, who already bears by far the heavier burden of proof in any tort action.
This reasoning applies with even greater force when the plaintiff has not sued other persons, and/or has not made factual allegations of negligence of others.
In The Louisiana Law of Comparative Fault: A Decade of Progress, Professor David Robertson of the University of Texas Law School defines the term "phantom tortfeasor" as follows: "The term `phantom tortfeasor' is often used to denote any putative tortfeasor not made a party to the lawsuit, i.e., any non-party tortfeasor." Robertson, The Louisiana Law of Comparative Fault: A Decade of Progress, Louisiana Law Practice Series, Vol. 1, Chapter V, at 57 (1991). Recently the Second Circuit Court of Appeal in Devereaux, (citing Varnado at 557 So.2d at 1095), as noted above, quantified the fault of the non-party tortfeasors and reduced plaintiff's recovery. We would be inclined to follow the lead of the Second Circuit in that regard in this case; however, the record in this case makes it impossible to do so. A plaintiff facing a possible reduction by showing the fault of non-parties cannot be expected to develop that evidence. The burden clearly must rest on the defense to establish the fault of "phantom tortfeasors" and the percentage thereof. This extension of the Raley rationale into comparative fault and the interpretation of new article 2324 may be somewhat disturbing to some, but on reflection, there can be no alternative other than that the burden of proving facts rests on the party asserting them.
In Devereaux the appellate court had before it a complete record of all of the conduct of the parties who could be at fault. This court does not have before it a complete record showing how the first accident occurred. In fact, there probably were two accidents before the final accident on which this suit is based. It appears from the record that the first accident consisted of two cars passing each other and striking the side view mirrors of each vehicle. From the testimony of the plaintiff, there appears to be a second striking by the truck driven by Mr. Labee into the van driven by Mr. Curtis Williams, while backing up, which actually caused some injury to the plaintiff. Incredibly, neither side called Mr. Curtis Williams to explain how that accident occurred; nor does the testimony presented of other witnesses *1179 sufficiently explain how the second phase of the first accident occurred.
Thus in disposing of this matter on appeal, this court is faced with two alternatives: to attempt to quantify the fault of the "phantom tortfeasors" on an inadequate record or to remand the case for retrial before the trial judge. No justification can be advanced for giving the defendant two bites at the apple and allowing him to prove what he failed to prove in the first instance. Neither party to this case has asked for a retrial, and, such a ruling would unduly burden the plaintiff in this case. Although the record establishes that plaintiff suffered some injury as a result of the first accident, since the defendants have failed to make a record showing proof by a preponderance of the evidence of the fault of any non-parties, this court can only apportion fault between the those shown to be at fault by the evidence in the record.

ASSIGNMENT OF ERROR NO. 5
Although it is difficult, based upon the scant record developed in this case, to determine whether any party carried its burden of proof, it is clear from the record that the trial court was manifestly erroneous in finding the plaintiff free of fault in the second accident. Plaintiff was standing in the middle of a narrow road with his back to traffic, leaning into the investigating officer's vehicle, and it was his own careless movements which placed him directly in the path of the side mirror of the approaching vehicle which was cautiously passing the parked vehicles at three to five miles per hour. Consequently, we find that plaintiff was 30% at fault in the second accident.

ASSIGNMENTS OF ERROR NO. 6 AND 7
State Farm argues that plaintiff had separated from his wife at the time of the accident and was therefore no longer a resident of her household entitled to coverage under her uninsured motorist policy. The record reveals that one or two days before the accident Vernon Haney and his wife Jocelyn Lee Haney argued and Haney left the house. He stayed away for several days, possibly as many as ten. Both Haney and his wife testified that he did not take any clothes or possessions when he left, and that he did not intend to leave for good at that time. In Bearden v. Rucker, 437 So.2d 1116, 1121 (La.1983), the Louisiana Supreme Court stated:
[T]he question of whether a spouse is a "resident of the same household" as the spouse named in the policy, in the context of whether the former remains covered under the family automobile policy issued to the named spouse, is not solely dependent upon whether the couple is living under the same roof. Rather the emphasis is upon whether there remains "a membership in a group rather than an attachment to a building;" and it is "a matter of intention and choice" rather than one of location.
Upon review of the facts of this case, and under the test given in Bearden, we find that the trial judge did not commit manifest error in his factual finding that Mr. Haney was a member of his wife's household and thus is covered under her uninsured motorist's policy.

ASSIGNMENT OF ERROR NO. 8
Before an appellate court can disturb an award made by a trial court, the record must clearly reflect that the trier of fact abused its discretion in making its award. Borden, Inc. v. Howard Trucking Co., Inc., 454 So.2d 1081, 1092 (La.1983). Only when a showing has been made that this discretion has been abused will an appellate court make an appropriate adjustment. Gibbs v. State, Department of Transportation and Development, 491 So.2d 446, 448 (La.App. 1st Cir.1986). After a thorough review of the record in this case, although a generous award was given for a short-term injury, we find that the trial judge did not abuse his great discretion in determining damages. However, as noted above, we have found some comparative fault on plaintiff's part; therefore, plaintiff's recoverable damages are the actual damages incurred as determined by the trial court, $20,000, less plaintiff's percentage *1180 of fault, 30%, for a total of $14,000.
For the foregoing reasons, the trial court judgment is affirmed in part and reversed in part. Costs are assessed at 70% to appellant and 30% to appellee. Plaintiff's damages are reduced to $14,000.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
LOTTINGER, J., concurs.
NOTES
[1] Nor did Haney complain of foot or hand pain immediately after the accident to Officer Scott, only shoulder pain.
[2] We feel compelled to follow the ruling of this circuit in Varnado v. Continental Insurance Company, 446 So.2d 1343, 1345 (La.App. 1st Cir.1984), wherein the court, considering former La.C.C.P. art. 1812(C), held as follows: "Addressing defendants' first assertion, we find that the trial judge was correct in considering the absent and presumably unknown tortfeasor. La.Code Civ.P. art. 1917 orders the trial court, in nonjury cases dealing with delictual damages, to `make specific findings that shall include those matters to which reference is made in Paragraph B of article 1811 of this Code.' [now paragraph C of 1812] Article 1811, Paragraph B2 refers to the degree of fault of `another involved person, other than the person suffering injury, death or loss ...'. Paragraph B1 refers to the fault of a party from whom damages are claimed. Therefore the implication is that the other person referred to in B2 includes one not a party to the suit." The recent amendment to current article 1812(C) makes it even more clear that the reasoning in Varnado is correct and must be followed. In the case sub judice there was a nonjury trial and under the interpretation placed on the codal provisions by the Varnado decision, the judge was required to quantify the fault "in an appropriate case" of other persons. The fact that La.Civil Code art. 2324 has been amended to bring about a modified type of solidarity should have no effect on the reasoning in Varnado`s interpretation of the Louisiana Code of Civil Procedure articles.

Under our jurisprudence, there is also a duty on a jury to consider the fault of any party. Melton v. General Electric Company, Inc., 579 So.2d 448 (La.1991); Lemire v. New Orleans Public Service, Inc., 458 So.2d 1308 (La.1984).
[3] "The courts of appeal have regularly assigned percentage fault to phantom tortfeasors. Apparently the earliest court of appeal decision to do so was Varnado v. Continental Ins. Co.,...." Robertson, The Louisiana Law of Comparative Fault: A Decade of Progress, Vol. I, Chapter V, at 58 (1991).