I,WILLIAMS, Judge.
In this personal injury action arising from two automobile accidents, the plaintiff, Jewel Johnson, appeals the trial court’s judgment allocating 90% of the fault in causing the accident to a phantom driver, and 10% of the fault to one of the defendants, Marcel St. Marie. For the following reasons, we affirm.
FACTS
On December 15, 1996, on a rainy evening, Marcel St. Marie was traveling west on Milhaven Road in Monroe, Louisiana, when an unknown driver abruptly changed lanes directly in front of St. Marie and then suddenly applied the brakes, causing St. Marie to run into the rear of the vehicle. When St. Marie stepped from his car to assess the damage to his vehicle, the unknown driver left the scene. As a result of the impact, the left side of St. Marie’s vehicle was damaged and he was unable to start the engine. The inoperable vehicle was sitting at almost a 45-degree angle across the westbound left lane of the four-lane road.
Following the accident, neither the ear’s headlights nor its emergency hazard lights were illuminated. Another driver and his wife, Ann and Barry Webb, who were traveling in the same direction, stopped and offered to call the police. St. Marie then crossed the highway and stood on the shoulder of the road for several minutes before returning to his automobile. He sat in the passenger seat and attempted to activate the hazard lights, but they would not work. While St. Marie was still sitting in the passenger seat, approximately five minutes after the first accident, his vehicle was struck from behind by Jewel Johnson’s automobile. This second accident caused Johnson’s personal injuries and property damage.
Subsequently, the plaintiff, Johnson, filed an amended petition for damages against the defendants, State Farm Mutual Automobile Insurance Company (“State Farm”), the insurer of the vehicle, and Marcel St. Marie. At the time of the accident, St. Marie was driving a vehicle owned by Rebecca Cox, who had | ^permitted his use of her automobile!
At trial, State Police Trooper John Peters testified that he responded to the call regarding the accidents, which had occurred between approximately 5:45 p.m. and 5:50 p.m. The trooper stated that the first accident caused damage to the left side of St. Marie’s vehicle, which was sitting at an angle pointed toward the right shoulder of the road. The trooper testi *161 fied that at the time of the accidents, the conditions were rainy and dark, and that there were not any street lights in that area of the highway.
According to Trooper Peters, the plaintiff stated that she did not see St. Marie’s vehicle until just before impact and that she was unable to stop because of the wet pavement. The accident caused “moderate damage” to the front of her vehicle and the rear of the other. The trooper testified that he and other police officers pushed the automobiles to the shoulder of the road.
St. Marie testified that the first accident occurred when a sports utility vehicle suddenly turned into the lane in front of him and slammed on its brakes. After the accident, the phantom vehicle drove away from the scene. St. Marie stated that approximately five minutes passed between the accidents and that during this time, he stood on the shoulder of the road parallel to his automobile trying to alert other drivers about the disabled vehicle. St. Marie acknowledged that he had not tried to push the car over to the shoulder of the road or to stop any of the several vehicles which passed. When the Webbs stopped, St. Marie said he did not ask them to help push his automobile to the shoulder of the road, or to park behind his vehicle with their hazard lights flashing in order to alert other traffic.
St. Marie testified that he was unable to start his vehicle’s engine because he could not turn the key. He stated that the steering wheel was stuck and that neither the headlights nor the hazard lights were on at the time of the second accident. However, his headlights had been working prior to the first accident and |3he had not turned them off. St. Marie acknowledged that following the first accident, he had not tried to activate his hazard lights before getting out of the car. He testified that after standing on the shoulder of the road for a few minutes, he returned to his vehicle, entered the passenger side and attempted to activate the hazard lights, but they were inoperable. A short time after this attempt, the second accident occurred. St. Marie stated that he watched his car being hooked onto the tow truck and that the vehicle’s lights were not activated.
The plaintiff testified that she did not see the St. Marie automobile until she was very close and was unable to stop in time to avoid a collision. Plaintiff said that before the accident, she did not see any lights on the disabled vehicle and did not notice St. Marie standing on the shoulder of the road. However, she stated that when St. Marie’s vehicle was hooked to the tow truck, she observed its driver turn on the automobile’s headlights.
Margie Lewis was a passenger in the plaintiffs automobile when the accident occurred. Thelma Johnson is plaintiffs daughter, who went to the scene to take her mother home. Both Lewis and Johnson testified that they saw the tow truck driver turn on the lights of St. Marie’s vehicle as it was prepared for towing.
Ann and Barry Webb testified that on the night of the accident, they noticed a sport utility vehicle speeding and weaving in and out of traffic. Ann Webb stated that she did not have any difficulty seeing the disabled vehicle from a distance of approximately five car lengths. Barry Webb testified that he noticed the damaged vehicle when another driver in front of him changed lanes. Barry Webb stated that he did not offer to push the disabled vehicle off the road or suggest that it be done.
After the trial, the district court issued its written reasons for judgment, finding that the phantom driver was 90% at fault in causing the second accident and that St. Marie was ten percent at fault. The court assessed fault to St. Marie after determining that the lights of his vehicle were inoperative following the first Raccident and that he could have placed himself in a better position from which to alert other motorists of the hazard. The district court’s judgment awarded plaintiff the *162 amount of $1,049, which is ten percent of the total damage award of $10,490. The plaintiff appeals the judgment.
DISCUSSION
In one of her assignments of error, the plaintiff contends the trial court was clearly wrong in finding that the lights on St. Marie’s vehicle were inoperative after the first accident. Plaintiff argues that the witness testimony does not support the trial court’s conclusion.
A court of appeal may not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. To reverse a fact finder’s determination, the appellate court must conclude that a reasonable factual basis for the finding of the trial court does not exist in the record. Stobart v. State Dept. of Transp. & Development, 617 So.2d 880 (La.1993). When findings are based on evaluations of witness credibility, the manifest error/clearly wrong standard demands great deference to the trial court. Powell v. Brookshire’s Grocery Co., Inc., 30,047 (La.App.2d Cir.12/10/97), 705 So.2d 286.
Here, St. Marie testified that his headlights were on prior to the earlier collision and that he had not turned off the headlights following the first accident, but afterward neither the headlights nor the hazard lights would work. At trial, Trooper Peters stated that he thought the battery in St. Marie’s automobile had been crushed in the first accident. The Webbs testified that they had not seen any lights on St. Marie’s vehicle when it was first observed by them. Although the plaintiff, her daughter and Lewis testified that the tow truck driver was able to turn | Kon the lights of St. Marie’s vehicle, the trial court was presented with a credibility decision and chose to believe the testimony of St. Marie, Trooper Peters and the Webbs. Based on the evidence in the record, we cannot say the trial court was clearly wrong in finding that the lights of St. Marie’s vehicle were not operating after being damaged in the first accident. The assignment of error lacks merit.
In another assignment of error, the plaintiff contends the trial court erred in assessing St. Marie with only ten percent of the fault in causing the accident. The plaintiff argues that St. Marie was completely at fault for the accident in which she was injured because he failed to remove the vehicle from the roadway or adequately warn other drivers of the danger.
A person shall not stop, park or leave any vehicle upon the main traveled portion of a highway when it is practicable to leave such vehicle off of said highway. LSA-R.S. 32:141(A). This provision is not applicable to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible and until such time he is responsible to protect traffic. LSA-R.S. 32:141(B).
Several factors are considered in comparing the relative fault of the parties, including: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La.1985). The allocation of fault is a factual determination subject to the manifest error rule. Hundley v. Harper Truck Line, Inc., 28,613 (La.App.2d Cir.9/25/96), 681 So.2d 46.
*163 In the present case, St. Marie testified that following the first accident, his | fiautomobile would not start and so he did not think he could remove it from the highway. At trial, Trooper Peters stated that the vehicle needed to be physically pushed to the shoulder of the road. Although the police officer did not arrive at the scene until after the second accident, the testimony established that St. Marie’s vehicle was disabled in the first accident. "Where a vehicle has stopped on the highway because it became disabled or stalled, there has been no violation of R.S. 32:141, which generally prohibits leaving a vehicle in the roadway. Poland v. Glenn, 623 So.2d 227 (La.App. 2d Cir.1993).
In her brief, the plaintiff argues that St. Marie was almost entirely at fault in the second accident, because in the five minute interval between accidents, he did not attempt to push his automobile to the shoulder of the road or to have another motorist with hazard lights park behind his vehicle to warn oncoming drivers. In support of her argument, the plaintiff cites Devereux v. Allstate, 557 So.2d 1091 (La.App. 2d Cir.1990) and Ly v. State, 633 So.2d 197 (La.App. 1st Cir.1993). In Devereux, supra, this court allocated a lower percentage of fault to the phantom driver than did the trial court in the present case. However, Devereux did not involve a collision between the phantom driver and the vehicle which ultimately struck a pedestrian. In Ly v. State, supra, the court affirmed the allocation of two-thirds fault to the driver of a vehicle stalled on the highway, finding that he should have taken further action to protect himself and other traffic. However, the court also assessed one-third of the fault to the motorist who struck the stalled vehicle.
In Stapleton v. Great Lakes Chemical Corp., 627 So.2d 1358 (La.1993), the driver of a pickup truck stopped her vehicle on an icy highway late at night to offer assistance to another motorist and failed to activate her hazard lights. A trailer truck saw the pickup in the road ahead, but could not stop on the ice. In swerving to avoid a collision with the stationary vehicle, the truck’s trailer swung around and struck a propane tanker traveling in the opposite direction. The |7supreme court concluded that the trial court was not clearly wrong in finding that the pickup driver was not at fault.
Under the circumstances of the present case, St. Marie probably could not have pushed the vehicle off of the highway by himself. Even with assistance, pushing an automobile without lights across a lane of traffic could have endangered the individuals involved and oncoming motorists. St. Marie might have averted the accident if he had tried to push the vehicle to the shoulder of the road, but he might also have made the situation worse for other drivers.
The trial court considered the evidence and found that St. Marie could have provided a better warning of the hazard to approaching motorists by remaining behind his vehicle and waving his hands. Consequently, the trial court allocated ten percent of the fault for the accident to St. Marie. The trial court heard the testimony and weighed the credibility of the witnesses. The parties offered competing theories regarding the respective fault of the phantom driver, St. Marie and the plaintiff in causing the accident. After reviewing the record, we cannot say the trial court’s allocation of ten percent of the fault to St. Marie was manifestly erroneous. Therefore, we will not disturb the result.
The plaintiff also contends the trial court erred in requiring “gross negligence” in order to find St. Marie liable for damages. Reviewing the trial court’s written reasons as a whole, and its judgment, we conclude that the trial court applied the proper standard in resolving this case. Contrary to plaintiffs contention, the trial court expressly found St. Marie’s actions to be a cause of the accident. The assignment of error lacks merit.
*164 CONCLUSION
For the foregoing reasons, the trial court’s judgment is affirmed. Costs of this appeal are assessed to the appellant, Jewel Johnson.
AFFIRMED.